the fee, but was to be dependent upon their securing a lease from the owner of the fee for a period sufficient to enable them to extend the plaintiffs' term for four years, which they actually succeeded in doing.    In case a lessee enters into contractual relations with a third party in respect to the subject of the lease, and afterwards obtains a renewal or a new lease, the renewal or the new lease will be deemed an extension of the original term, as between the lessee and the third party, if it be necessary for the protection of the rights of the third party.    In case a lessee mortgages his term for years, and afterwards, instead of obtaining a renewal, takes a new lease for three lives, his new lease is subject to the mortgage.    Smith v. Chichester, 2 Dru. & War. 393, 1 Connor & L. 486; White & T. Lead. Cas. Eq. (3d Am. Ed.) 84–97; 1 Platt, Leas. 762 et seq.; Wood, Landl. & Ten. 680. The defendants were not relieved from their covenant to extend the plaintiffs' term for four years because they obtained a new lease, instead of a technical renewal of their old one.

The court found, and the fact was not disputed on the trial, that the plaintiffs did not, at least three months before the expiration of their lease, notify the defendants in writing that the plaintiffs elected to continue their lease for four years.    The defendants contend that the failure to serve this written notice bars the claim of the plaintiffs that their term was extended.    When the time for serving this notice arrived, the defendants had not secured an extension of their lease or a new lease from the owner of the fee, and the renewal clause provides that a notice would not extend the plaintiffs' term unless the defendants' should be extended.    It was testified on the trial that the plaintiffs talked with the defendants about an extension for four years in case they obtained an extension, and that the defendants promised so to extend the term.    The trial court found as a fact, and I think upon sufficient evidence, that the defendants waived the service of this notice, because the owner of the fee had not, when the time arrived for its service, granted them a new lease, and the term of the defendants was consequently uncertain.    It was competent for the defendants to waive service of the written notice, orally or by acts.    Long v. Stafford, 103 N. Y. 274, 8 N. E. 522.

The judgment should be affirmed, with costs.    All concur.

---

ALEXANDRIA BAY STEAMBOAT CO. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    June 12, 1897.)

1. CONTRACTS IN RESTRAINT OF TRADE—COMBINATION OF CARRIERS.
    Laws 1890, c. 564, § 7, and Laws 1892, c. 688, § 7, declaring that no stock corporation shall combine with any other corporation to prevent competition, do not inhibit a railroad company whose road terminates at a point where the boats of competing steamship companies land from selling tickets to such terminus, with coupons attached entitling passengers to be conveyed over a particular one of such steamship lines, or, when it receives freight for transportation to points on such lines, from billing it to its destination over the favored line, provided it does not refuse to sell, on demand of passengers, tickets over the competing line, when such tickets

are furnished it, or to ship freight over such line, if so requested by the shipper.

2. SAME—USE OF TERMINAL FACILITIES.

Laws 1892, c. 676, § 34, declaring that no preference for the transaction of the business of a carrier on its cars, or in its depots or buildings, etc., shall be granted by any railroad to any one of two or more competing persons or corporations, does not inhibit a railroad company whose road terminates at a point where competing steamboat companies touch from' conferring on one of such companies an exclusive right to occupy the docks and other terminal facilities belonging to said road.

Appeal from special term.

Action by the Alexandria Bay Steamboat Company against the New York Central & Hudson River Railroad Company to compel defendant to furnish plaintiff with the same facilities for the transaction of business as it furnishes to a competing steamboat company. From an interlocutory judgment sustaining a demurrer to the complaint, and from a final judgment dismissing the complaint, plaintiff appeals. Affirmed.

The following opinion was rendered at special term:

In substance, the complaint states that the plaintiff and the Thousand Island Steamboat Company are corporations organized and existing under the laws of this state, and are each engaged as common carriers in transporting passengers and freight between points on the St. Lawrence river and Clayton and Cape Vincent in the county of Jefferson, and that they are competitors of each other. The defendant is a corporation, also organized and existing under the laws of this state, and is engaged in operating a railroad extending through various parts of said state, two branches of which terminate at Clayton and Cape Vincent, respectively, and at such termini the defendant owns and occupies docks, depots, and other facilities necessary for the conduct of its business, and so located as to be convenient and desirable for the use of said competing steamboat companies. The defendant permits the Thousand Island Steamboat Company to occupy its said docks and depots, and to enjoy generally with it its terminal facilities. The defendant also materially aids the Thousand Island Steamboat Company in the transaction of its business, by selling tickets at all stations upon the line of defendant's railroad, with coupons attached, entitling the purchaser to transportation to Clayton or Cape Vincent over defendant's railroad, and also to any point on the St. Lawrence river, but only upon the boats of the Thousand Island Steamboat Company. Through checks are also issued by the defendant for the baggage of such passengers. In like manner, all freight received by the defendant at any point upon its railroad destined to points upon the St. Lawrence river beyond the termini of its road is billed through to its place of destination via the boats of the Thousand Island Steamboat Company. The defendant also honors the tickets and bills of lading issued by the Thousand Island Steamboat Company, and purporting to entitle passengers or freight to be conveyed over the railroad of the defendant. In fact, a contract agreement exists between said two companies by which one becomes the agent of the other for the transportation of such passengers and freight as may originate on the line or route of the one, and destined to a point on the line or route of the other. The defendant, although requested so to do, refuses to enter into such or similar relations with the plaintiff; refuses to allow it to occupy its docks or depots at Clayton or Cape Vincent; refuses to sell for it through tickets, or issue through bills of lading.

It is not specifically alleged, nor can it be fairly inferred from the complaint, that the defendant neglected or refused, after demand made, to comply with the provisions of chapter 565, § 47, of the Laws of 1890. The statute provides, among other things: "The proprietors of any line of steamboats, terminating or stopping for passengers at any place where a railroad corporation has a station or depot, may furnish tickets and baggage checks to such corporation for the use of passengers traveling over its road, who desire to connect with

such line of boats at any such place, and the railroad corporation shall sell such tickets and deliver a duplicate of one of such checks to any such passenger applying therefor, and shall account for and pay over to the proprietor of such line of boats all moneys received by it for the sale of such tickets." This statute imposes substantially the same obligation upon steamboat corporations in respect to the sale of tickets for railroad corporations whose lines may connect with the lines of such steamboat companies. The transportation of freight by such corporations whose lines connect with each other is regulated in similar manner. The plaintiff, however, did not furnish or offer to furnish to the defendant the tickets or checks contemplated by the section of the act above quoted. Nor has the defendant refused to sell such tickets or issue such checks for the plaintiff. By the provisions of the statute quoted, the defendant is required to sell at any of its stations tickets, upon demand, to its passengers going to Clayton or Cape Vincent, which will entitle the purchaser to be conveyed over the line of the plaintiff, provided such tickets are furnished by the plaintiff, and to check the baggage of such passengers to such points upon the route of the plaintiff. Practically the same duty is imposed upon the defendant respecting freight over its road, and destined to points beyond its termini and upon the line of the plaintiff's boats. There is no allegation in the complaint from which it can be fairly inferred that the defendant has neglected or refused to perform such duty after demand made. The complaint of the plaintiff is that the defendant, when a ticket is asked for by a passenger upon its railroad, at any of its stations, to Alexandria Bay or other points on the St. Lawrence river, beyond the termini of the defendant's railroad, sells a ticket over its road to Clayton or Cape Vincent, but with a coupon attached entitling the passenger to be conveyed to Alexandria Bay or other points over the line of the Thousand Island Steamboat Company, and that the defendant, when freight is tendered to it at any point upon the line of its railroad for shipment to Alexandria Bay or points beyond its termini, bills it through to its point of destination via the boats of the Thousand Island Steamboat Company. It is apparent that this method on the part of the defendant is of great advantage to the Thousand Island Steamboat Company, because the passenger or shipper of freight upon its road does not know of either of the steamboat companies, and accepts such method of transportation, after arriving at Clayton or Cape Vincent, as is suggested by the defendant, by the sale of the ticket furnished by the defendant, and such method of doing business gives a great advantage to the Thousand Island Steamboat Company over its rival, the plaintiff in this action.

It is urged by plaintiff's counsel that section 7, c. 564, Laws 1890, which provides, "No stock corporation shall combine with any other corporation for the prevention of competition," and section 7, c. 688, Laws 1892, which provides: "No stock corporation shall combine with any other corporation or person for the creation of a monopoly or the unlawful restraint of trade, or for the prevention of competition in any necessity of life," may be invoked to restrain the defendant from pursuing such course of dealing with the Thousand Island Steamboat Company as shall give to it the advantage over the plaintiff in the transportation of freight and passengers between the termini of defendant's railroad and points upon the St. Lawrence river. Attention has not been directed to any case where, under like circumstances, the statutes referred to have been held to apply. The defendant has not and does not refuse to sell at any of its stations, to any passenger demanding the same, a ticket entitling such passenger to be transported on the plaintiff's line of boats after leaving its cars at Clayton or Cape Vincent, provided the plaintiff shall furnish to the defendant such tickets. But the defendant does refuse, although requested (which may be fairly implied), to sell a ticket which, so far as the passenger or purchaser is concerned, will make the plaintiff the agent of the defendant in the transportation of such passengers upon the line of plaintiff's boats. The defendant does not and has not refused to take all freight offered to it for shipment to points beyond its termini on the St. Lawrence river, and to ship the same over the line of the plaintiff if requested by the shipper so to do. It does refuse, however, unless such request is made by the shipper, to undertake that any part of such freight shall be shipped over plaintiff's line. The sections of the statutes referred to can hardly be held to mean that because one steamboat

company doing business upon the St. Lawrence river, and whose line of boats touches or terminates at points reached by defendant's railroad, has made an advantageous arrangement with the defendant, that all other steamboat companies doing business upon said river shall be entitled to equal benefit under such arrangement. The defendant by the provisions of the statutes last quoted is required to convey all passengers over its railroad to Clayton or Cape Vincent on precisely the same terms and exactly under the same conditions, regardless of what their place of destination may be after leaving the cars of the defendant. If one is landed at its dock at such place, all must be so landed. If one is landed at a more convenient place, all must be landed at such place. So all freight conveyed by the defendant to such places must be landed, dealt with, and handled precisely the same, regardless of who the shipper may be, regardless of who the receiver may be, and regardless of what its destination may be; and if, when those conditions are observed, the plaintiff still is at a disadvantage as compared with the Thousand Island Steamboat Company or other steamboat company, relief is not to be found in the sections of the statutes referred to.

Attention is also directed to Laws 1892, c. 676, § 34, which provides: "No preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its grounds, shall be granted by any railroad corporation to any one of two or more persons, associations or corporations competing in the same business, or in the business of transporting property for themselves or others." It is insisted by the counsel for the plaintiff that under the section above quoted the plaintiff is entitled to occupy the docks, depots, and grounds of the defendant at Clayton or Cape Vincent for the transportation of its business, the same as such grounds, buildings, and terminal facilities are occupied and used by the Thousand Island Steamboat Company in the transaction of its business. This statute has been interpreted in Brown v. Railroad Co., 75 Hun, 355, 27 N. Y. Supp. 69. The origin of the statute, the purpose for which it was enacted, is clearly pointed out in the able and exhaustive opinion of Judge Lewis. In that case the plaintiff, who was a hack driver at Niagara Falls, sought to obtain from the defendant the same privileges which were accorded by the defendant to a competing hack driver, to wit, in permitting the plaintiff to go within the depot grounds of the defendant and solicit passengers. In that case it was held that the plaintiff's business—that of hack driver—came within the general definition of a "common carrier"; although the learned judge states that, when speaking of common carriers, we do not ordinarily understand a hackman's business to be included in that term. And at page 358, 75 Hun, and page 71, 27 N. Y. Supp., the judge says: "If it be conceded that the business of a common hackman comes under the general definition of a 'common carrier,' it does not follow that it comes within the protection of this statute." And, after a full discussion of all the cases bearing upon the subject, it is held that, assuming the plaintiff was a common carrier, within the meaning of the statute, the defendant was not prohibited from entering into contractual relations with another and competing hackman, which entitled such hackman to solicit passengers within the depot inclosure, and prohibited the plaintiff from doing the same thing. And at page 359, 75 Hun, and page 72, 27 N. Y. Supp., the court says: "When the passengers alight from the cars at the Falls, defendant's contract relations with them are ended. The business the passengers employed it to do has been performed. The defendant owes them no further duty. It is after the relations of the passenger and the company are ended that the plaintiff's opportunity to deal with them commences. His business is to take the passenger in his carriage at that time, and drive him about the city, for a consideration. The statute does not assume to reach such a case. It says no preference for the business of a common carrier upon its cars shall be granted, etc. What right has the plaintiff to demand that the defendant shall appropriate to him, for the purpose of carrying on his private business, its yards and cars, and that without paying anything for it? If the statute gives him what he claims, then each and every one of the fifty or more hackmen at the Falls are entitled to put their agents upon the defendant's cars to solicit business for their carriages, so long as the Miller & Brundage Company enjoys that right, and for which right it pays a consideration to the defendant." "If the plaintiff be right in his contention, it logic-

ally follows that any one wishing to engage in the business of selling papers, pamphlets, stationery, etc., has the right, if he can find any unoccupied corner in a railroad depot, to insist upon occupying it for his business, if any other person shall be occupying a place in said depot for a like business by permission of the company."

In the case at bar, when the defendant railroad company conveys its passengers to Clayton or Cape Vincent, as the case may be, the contract relations between such passengers and the defendant are at an end. And if it is absurd to suppose, as stated by Judge Lewis, that, because the defendant railroad company in that case made a contract by which one hackman at Niagara Falls could enter its grounds to solicit passengers, that all other hackmen were entitled to the same privilege, so equally it is absurd to suggest that, because the defendant in this case permits one steamboat company upon the St. Lawrence river to occupy its docks and terminal facilities at Clayton and Cape Vincent, all other steamboat companies plying upon said river have also a right to occupy said docks and enjoy said terminal facilities. It is a matter of common knowledge that the New York Central & Hudson River Railroad Company, under agreement, we must assume, permits the Western New York & Pennsylvania Railroad Company to occupy its passenger station at the city of Buffalo with its passenger trains. Under the statute in question, must it accord the same rights to all other railroad companies entering the city of Buffalo? The statute in question also received interpretation in the case of Railroad Co. v. Flynn, 74 Hun, 124, 26 N. Y. Supp. 859. In that case it was held (quoting the headnote): "The statutory prohibition does not give all the hackmen of a city or village the absolute right to intrude upon or make a stand of the premises of a railroad corporation for the purpose of soliciting passengers; nor does it prevent a railroad corporation, which by contract has conferred upon a transfer company the exclusive privilege of going upon its premises with hacks for the purpose of soliciting passengers, from prohibiting other hackmen, having no contract relation with the railroad corporation or its passengers, from doing so." In that case Judge Putnam, writing the opinion of the court, says: "The meaning of the statutory provision under consideration is, as above suggested, not entirely clear; but we think it should be construed to mean that no preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its ground, shall be given by railroad corporations to any one of two or more persons competing in the same business, or in the business of transporting property, while having contractual relations with said railroad corporation as a common carrier." Attention is called by the able counsel for the plaintiff to the case of New York & N. Ry. Co. v. New York & N. E. R. Co., 50 Fed. 867, where section 3 of the interstate commerce act, as amended by the Laws of 1889, was construed. After a careful examination of such case, I am led to the conclusion that it has no bearing upon the question now under discussion, for the reason that by the last clause of said section it is provided: "But this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business."

Attention has not been called to any case which holds that a railroad company whose railroad terminates at a point at which the boats of several steamboat companies may touch or land may not enter into an agreement with one of said steamboat companies, permitting it to enjoy the use of said railroad company's terminal facilities, without thereby becoming obliged to permit all of said steamboat companies to also use and enjoy its terminal facilities; and that notwithstanding that such agreement may work to the advantage of the steamboat company with whom such agreement is made, and to the disadvantage of the other companies. The defendant in this case was under no obligation to build or maintain a dock at Clayton or Cape Vincent for the transaction of its business, but having done so, and by permitting the steamboats of one line to stand alongside such docks, does the defendant become obligated to accord to the steamboats of all other lines the same privilege? If the Thousand Island Steamboat Company owned the dock or docks in question, and the railroad of the defendant terminated as it now does, the advantage to the Thousand Island Steamboat Company would be the same as now,—no greater or no less,—so far as transaction of its business is concerned. The same disadvantage would

result to the plaintiff as is now sustained. The competition between the two competing steamboat lines would be affected precisely as it is now affected, according to the allegations of the complaint. What would then be the remedy? Would the plaintiff be entitled to demand the joint use of such docks with the Thousand Island Steamboat Company? There is no statute which would support such claim, and there is no principle of the common law by which it could be maintained. And still all the evils of monopoly and lack of fair competition suggested by plaintiff's counsel would exist under those conditions, the same as under the conditions disclosed by the complaint in this action. After careful consideration, the conclusion is reached that the demurrer to the plaintiff's complaint should be sustained, with costs. Judgment is ordered accordingly.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Hannibal Smith, for appellant.

Daniel G. Griffin, for respondent.

PER CURIAM. Judgments affirmed, with costs, on the opinion of McLENNAN, J., delivered at special term.

---

BOPPLE et al. v. SUPREME TENT OF KNIGHTS OF MACCABEES OF THE WORLD.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. WITNESSES—TRANSACTIONS WITH DECEDENTS—INTEREST IN ACTION.
   The officer of a mutual benefit association who is charged with the duty of receiving dues is not, because of his liability to assessment as a member for death benefits, "interested in the event" of an action against the association for death benefits, and therefore he is not disqualified by Code Civ. Proc. § 829, from testifying that the deceased member had not paid his dues, so as to keep his certificate of membership in force.

2. INSURANCE—FRATERNAL SOCIETIES—FORFEITURE.
   Laws 1892, c. 690, § 233 (contained in article 7, relating to fraternal societies), provides that such societies "shall be subject only to the provisions of this article, and such provisions of article 1 as may be specially applicable thereto." The provision of the chapter in respect to forfeiture of life policies for nonpayment of premiums unless notice of the assessments is given is contained in the article which relates to life, health, and casualty insurance corporations. Held, that proof of notice of assessments is not necessary to establish the forfeiture of membership in a fraternal society for nonpayment of the assessments.

3. SAME—ACTION FOR BENEFIT—APPLICATION AS EVIDENCE.
   In an action for the death benefit under a certificate of membership, which provided that no rights should accrue under it if it was obtained by any misrepresentation as to the member's occupation, etc., the defense was that such misrepresentation had been made. Held, that the application for membership containing statements made by the member as to his occupation was admissible in evidence, though it was not referred to in the certificate, and made part of the contract.

Appeal from trial term.

Action by Sebastian Bopple and others, infants, by Sebastian Bopple, their guardian ad litem, against the Supreme Tent of the Knights of Maccabees of the World. From a judgment entered on a verdict directed by the court in favor of plaintiffs, and from an order deny-