---

In re VAN ALSTYNE et al.

(Supreme Court, Appellate Division, Third Department. November 15, 1911.)

WITNESSES (§ 178*)—COMPETENCY—STATUTES.

> Where a wife, as executrix of the estate of her husband, was examined under Code Civ. Proc. § 2707, as to the ownership of notes executed by her in favor of a third person which had been assigned to the husband, such examination, under the direct provisions of section 2709, rendered the wife a competent witness to testify as to the transaction with her husband, despite section 829, which prevents a party from testifying as to transactions with one deceased.
>
> [Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 178.*]
>
> Smith, P. J., and Betts, J., dissenting.

On reargument. Former opinion (142 App. Div. 209, 126 N. Y. Supp. 1078) adhered to.

See, also, 130 N. Y. Supp. 1133.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

Charles Oakes, for appellants.

Thomas F. Wilkinson, for respondent.

PER CURIAM. After our former decision herein (142 App. Div. 209, 126 N. Y. Supp. 1078), a reargument was granted on the ground that, although the record as it then stood did not so disclose, the actual facts occurring upon the trial would show that the testimony of

Mrs. Van Alstyne given in her behalf was received under such circumstances and objection as rendered her incompetent to testify.

Leave was given to resettle the case, and it now appears that such claim was unfounded, and that Mrs. Van Alstyne was a competent witness to testify in her own behalf to the facts which she disclosed, and which this court held proved a bargain between herself and her deceased husband, whereby she paid to him the rents of the Washington property in consideration of his having canceled and discharged the incumbrances thereon. It now appears from statement of counsel and the record that, prior to the accounting proceedings upon which the decree appealed from was taken, Mrs. Van Alstyne's coexecutor, the present respondent, instituted proceedings before the surrogate to discover property withheld by her, which property consisted of the notes in controversy. That proceeding was instituted under the power given by section 2707 of the Code of Civil Procedure and is referred to throughout the present record as the "inquiry proceeding." In that proceeding Mrs. Van Alstyne was sworn and examined by counsel for the present respondent executor, and against her objection was compelled to give testimony against herself sufficient to fasten prima facie liability upon her to account for the notes which she obtained possession of after the death of her husband. The notes were indorsed without recourse by the original holders, to her testator, and therefore prima facie they belonged to him. She was compelled to testify that she did not have possession of them during his lifetime, and therefore no presumption arose that they were given to her by him prior to his death. She was also compelled to give testimony that the checks for the rents came to herself and that she indorsed them over to her husband. This proved, as claimed by respondent, partial payment of interest thereon and a recognition of an existing debt against her in behalf of her husband.

On the present trial the stenographer, who took the testimony of Mrs. Van Alstyne on the inquiry proceeding, was called, and he identified 153 pages of her testimony, showing that the inquiry must have been exhaustive, and from the fact that the notes in controversy were included in the account, under objection by her, the proceeding must have resulted in an order of the surrogate directing her to place them on the inventory of the estate of the testator and to account therefor. After certain portions of the testimony given by Mrs. Van Alstyne in the discovery proceeding had been read by the respondent's counsel, the appellant read certain other portions, some of which had been drawn out by questions propounded by the coexecutor, the present respondent, and some by her own attorney, some answers being confined to what she did with the notes after her husband's death, and some relating to personal transactions with him in his lifetime, especially as to transferring the checks received for rent to him, she stating that she did transfer them to him but not as payment on the notes, and then she was called to the stand as a witness in her own behalf and examined orally, and objection was made to her testifying to personal transactions and communications had with her deceased husband, tending to relieve her from liability to account for such notes.

and to explain away prima facie liability which had been fastened upon her to account therefor, on the ground that she was incompetent to so testify under the provisions of section 829 of the Code.

Section 2709 of the Code provides that a person to whom a citation has been issued in a proceeding for the discovery of assets, as was done in the present case, must attend before the surrogate and be sworn respecting any property of which the decedent had possession at the time of or within two years prior to death, and if he refuses to be sworn he may be punished as for a contempt. The section further provides:

"If the witness is examined concerning any personal communication or transaction between herself and the deceased, all objection under section 829 to his testimony as to the same in future litigation is waived."

Mrs. Van Alstyne was brought into court by her coexecutor. She was examined with respect to personal transactions had with her deceased husband sufficient to fasten liability upon her to account for the notes in controversy. The provision of the section above quoted prevented the respondent from invoking section 829 to close her mouth in explanation of why she had possession of the notes and why she indorsed the checks over to her husband, and that explanation involved the bargain which she had made with her husband, and she had a right to testify to all the facts which she disclosed because of the waiver of the provisions of the section by calling her as a witness in the inquiry proceeding.

Almost the identical facts here appearing were disclosed in Killion v. Heinzerling, 114 App. Div. 410, 99 N. Y. Supp. 1036, where it was held that the provisions of section 829 did not apply to the witness.

The transfer of the checks received for rent by Mrs. Van Alstyne to her husband involved a personal transaction between her and him and presumptively showed payment on an apparent indebtedness. If she had not been examined on the inquiry proceeding, she would have been an incompetent witness to explain how she came to indorse them over to him (Koehler v. Adler, 91 N. Y. 657), as well as incompetent to say whether she had possession of the notes prior to his death, or what agreement existed as to them (Clift v. Moses, 112 N. Y. 426, 20 N. E. 392).

It now appearing that she was made competent, by being sworn on the inquiry proceeding, to testify to the personal transactions and communications had with her deceased husband which she testified to, and that the testimony which she gave was not improperly received, it follows that this court is bound to make the same decision which it made on the previous argument, with costs as therein provided.

Decree, so far as it determines that the estate owns the notes and deeds of trust and that Laura L. Van Alstyne is liable thereon, reversed upon the law and the facts, and it is adjudged that she is not liable to the estate therefor, and that her accounts shall not be charged therewith, and the decree of the surrogate is modified accordingly, and further modified to give full effect to such modifications, and as so modified is in all respects affirmed, with costs to the said Laura L.

Van Alstyne to be paid from the estate. All concur, except SMITH, P. J., dissenting, and BETTS, J., dissenting in opinion.

BETTS, J. (dissenting). This case has been before this court before, and the decree of the surrogate was reversed. See the opinion of a majority of the court, reported in 142 App. Div. 209, 126 N. Y. Supp. 1078. A motion for reargument was made by the executor, which was granted.

Thomas J. Van Alstyne, the deceased, was a lawyer, and at one time county judge of Albany county, and had been a member of Congress from the Albany congressional district, and was a man of means and ability. He had been three times married. By his first wife he had one son, the executor, Thomas B. Van'Alstyne; by his second wife he had no surviving children; and by his third wife, Laura L. Van Alstyne, the executrix, he had one son, William T. Van Alstyne, the appellant, who was at the time of the proceeding in the Surrogate's Court an infant, but who is now of full age.

Laura L. Van Alstyne, the executrix, prior to her marriage was Laura L. Wurdemann. In December, 1885, said Laura L. Wurdemann owned a piece of real estate in Washington, D. C., and on December 30th of that year she executed three deeds of trust of the same to Richard W. Tyler and Robert G. Rutherford, trustees, to secure three separate notes made by her. The first two deeds of trust were made to secure respectively a note of $10,000, payable three years after date to the order of the Girard Life Insurance, Annuity & Trust Company of Philadelphia, and a note of $5,000 to the same company payable three years after date. The third deed of trust was to secure the payment of a promissory note for $4,200 five years after the date thereof payable to the order of her father, William Wurdemann. These various deeds of trust were duly recorded, and the notes given to the parties to whom they were payable, and the money received therefrom was used in erecting a new building or buildings upon her said real estate in Washington. While so situated financially, and on February 17, 1886, she was married at her father's house in Washington to Thomas J. Van Alstyne. He died October 26, 1903. Some time after the marriage, Thomas J. Van Alstyne paid to the owners of these notes the amount secured thereby, and the three notes were indorsed to him by the trust company and by William Wurdemann, without recourse, and with the three deeds of trust were delivered to him. Said deeds of trust have never been canceled or discharged of record. It is stipulated herein that the $5,000 note came into his possession March 9, 1887, the $10,000 note January 17, 1888, and the $4,200 note January 1, 1889. Prior to her marriage and for some time thereafter, Messrs. Tyler and Rutherford were the agents of Mrs. Van Alstyne caring for this real estate and receiving the rents therefrom and remitting the net rents by check to Mrs. Van Alstyne about twice during each year. On and after October 2, 1888, all said checks were indorsed by Mrs. Van Alstyne and turned over to her husband during the time that Tyler and Rutherford remained her agents, and later one Thomas N. Waggaman became her agent and

remitted in practically the same way; the last check being received by her from him July 1, 1903, and indorsed over and delivered to her husband.

Mrs. Van Alstyne had not seen these notes or deeds of trust nor any of them subsequent to the time of her signing the same until after her husband's death. About a year prior to his death she went with her husband to a safe deposit company in Albany, where he rented a box in their joint names, giving her a key and retaining a key himself therefor. In this box were all or many of the valuable papers of Judge Van Alstyne and these three deeds of trust and three notes and also his will. After the probate of his will and at the time of the appraisal of his estate, the executrix and the executor went to this safe deposit company and opened the box. Mrs. Van Alstyne took these deeds of trust and the notes and did not hand them in for the inventory, insisting that her husband had paid off these notes and either gave them to her or gave the money with which he paid them off to her, and that they were her individual property and not the property of the estate. This contention was resisted by the executor, who insisted that they were part of his father's estate. It was stipulated that the amounts of the notes January 1, 1910, with interest, was $43,956.25, and that the checks received from Mrs. Van Alstyne's Washington agents for net rents received amounted to $15,006.25, so that, assuming that these notes belonged to Judge Van Alstyne's estate at the time of his death and that the amounts of the checks turned over to him at various times by the executrix were for payments thereon, the amount still remaining due from Mrs. Van Alstyne to her husband's estate would be $28,950. After quite a long trial before a referee, he reported that this money belonged to the husband during his lifetime and properly to his estate after his death, whereupon he surcharged the executrix's account with $28,950. In the meantime the infant, William T. Van Alstyne, having become of age, assigned all his interest in the estate to his mother before the taking of this appeal, so now the actual contest is as to some $9,945.12 which is in question as to whether it should belong to Thomas B. Van Alstyne or the widow, Laura L. Van Alstyne. The only question, therefore, that is to be determined on this appeal, is whether Laura L. Van Alstyne or the estate of Thomas J. Van Alstyne is the owner of three certain notes. The will of decedent made his two children and his wife residuary legatees, in equal parts.

I am unable to agree with the prior decision of this court and think that the case was properly decided by the referee and the surrogate.

Judge Van Alstyne lived to be a man of quite some years. He was a well-informed man of affairs, very competent, and very independent in his methods of dealing with his own property. He was a competent lawyer. It is difficult to understand, and no reason whatever is advanced in the record, why, if he wished to make his wife a present of the amount in controversy, the amount that she had borrowed upon her notes, he did not cancel these deeds of trust and these notes and turn them over to her during his lifetime.

Various statements were testified to as having been made by him

to his wife, and also made by him to his son and his wife's sister, as to the fact that he had paid off his wife's debts upon her Washington real estate; but, making allowance for the tender years of this son, who was about 12 years of age at the time he stated these statements were made to him, and the infirmities of memory of Mrs. Van Alstyne and her sister of conversations many of which had taken place many years before, the fact remains that he retained custody of these papers so long as he lived, that he received payment from his wife of the entire net income of this property, and that there is lacking, aside from some of the things that he is said to have stated, an entire absence of any act upon his part that would look like a disposition to give this amount of property to his wife. Apparently by his will he intended to treat his two children and his wife as nearly equal as he could, favoring his wife somewhat in the disposition of the contents of his house. If the contention of the wife be sustained here, a very uneven disposition was made by him of his property as between his children and his wife, as the wife would get a large portion thereof.

The widow was not in any event hurt or injured financially by the action of Judge Van Alstyne, even if he intended to retain said notes as his own. He took up her notes by purchase, and she paid him therefor, not the full legal interest, but all the income that she received from this particular property upon which the deeds of trust to secure these notes were liens. Had he not done so, she would have had, in order to pay the interest, to have advanced money for that purpose in addition to the income from the property. By the decision of the Surrogate's Court she has not been required to advance anything until she received money from her husband's estate to pay the notes and the balance of the interest. In addition, these notes to the trust company and to her father as well would have been due long years before, and the principal might have been required to be paid at the time that they did become due, so she might and would have been in some way put to extra expense and trouble in paying them off or in seeking new loans at the time that they became due. All this was avoided by the course which her husband took.

If this can be sustained as a gift at all, it must be sustained as a gift inter vivos. In order to sustain such a gift, a delivery actual or symbolical must be made at the time of the gift. There was no delivery whatever. At the time of this hiring of the safe deposit box, Mrs. Van Alstyne did not even know that her husband at that time put these papers in the box, nor does she now know that he did so then; she did not see them, she did not see him put them in the box, nor did she see either the deeds or notes at that time, nor did she know that he had them at that time in his possession. The giving her of the key and taking the box in their joint names may very well have been for the convenience of Judge Van Alstyne in his advancing years, or that he took into consideration the probability of his death that his wife might have a key to find his will after his death. I cannot from that act find anything indicating a delivery on his part of these papers to his wife. Matter of Bolin, 136 N. Y. 177, 32 N. E. 626; Slee v. Kings County Savings Institution, 78 App. Div. 535, 79 N.

Y. Supp. 630; Matter of O'Connell, 33 App. Div. 483, 53 N. Y. Supp. 748; Matter of Schroeder, 113 App. Div. 204, 207, 99 N. Y. Supp. 176. See Young v. Young, 80 N. Y. 422, 430 (36 Am. Rep. 634), where it is held:

"To establish a valid gift, a delivery of the subject of the gift to the donee or to some person for him, so as to divest the possession and title of the donor, must be shown."

The burden of showing this is on the person alleging or claiming the gift.

Question is raised here as to whether any error crept into the record from the evidence admitted as to statements alleged to have been made by Judge Van Alstyne to his wife, and whether such statements were competent; an objection and exception having been taken under section 829 of the Code of Civil Procedure. There is some confusion in the record resulting from the introduction in the accounting before the surrogate of evidence given in a discovery proceeding by Mrs. Van Alstyne instituted against her by the executor, and it is a little difficult to decide just how far she would be permitted (from the fragmentary way in which this evidence was introduced or sought to be before the referee) to testify as to such statements.

I think that much of the evidence that was introduced by her was not in reply to or any part of the transactions concerning which she was interrogated by the executor, and that the executor had not opened the door for the wholesale statements that she testified to as having been made to her by Judge Van Alstyne concerning the alleged payments of these notes or her indebtedness to him, and was therefore incompetent; but, assuming that all that is in the record is properly there, I still think that it falls far short of establishing a gift by Judge Van Alstyne of either these notes or the money which he used to purchase them with to Mrs. Van Alstyne. I can see no other way in which Mrs. Van Alstyne could sustain her claim that these notes were her property, except by proving a gift, and the burden of proving the same is upon her.

For these reasons I think that the decree of the surrogate should be affirmed, with costs, and that the costs should be paid from the estate.