THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY and THE CONSOLIDATED TRANSFER COMPANY, Respondents, *v.* JAMES FLYNN and Others, Appellants.

*Exclusion of hackmen from railroad premises — Railroad Law, § 34.*

Section 34 of the Railroad Law (Laws of 1890, chap. 565, as amended by Laws of 1892, chap. 676) is to be construed as meaning that no preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its grounds, shall be given by a railroad corporation to any one of two or more persons competing in the same business, or in the business of transporting property, who have contract relations with the railroad corporation as a common carrier.

This statutory prohibition does not give all the hackmen of a city or village the absolute right to intrude upon or make a stand of the premises of a railroad corporation for the purpose of soliciting passengers, nor does it prevent a railroad corporation, which, by contract, has conferred upon a transfer company the exclusive privilege of going upon its premises with hacks for the purpose of soliciting passengers, from prohibiting other hackmen, having no contract relations with the railroad corporation or its passengers, from doing so.

APPEAL by the defendants, James Flynn and others, from an order of the Supreme Court, granted at the Albany Special Term and entered in the office of the clerk of Albany county on the 2d day of September, 1893, continuing *pendente lite* a temporary injunction restraining the defendants "from entering or being upon the lands of the said plaintiff, the New York Central and Hudson River Railroad Company, contiguous to and on the west side of its railroad depot in the city of Albany, in any other manner or for any other purpose than that in and for which the same may be lawfully used by the public in going to and departing from the trains of the plaintiff, the New York Central and Hudson River Railroad Company, and further restraining the defendants from obstructing and interfering with, or blocking up the passageways or entrances to the said depot, depot grounds or buildings, and from in any manner interfering with, and preventing the free and uninterrupted right of ingress or egress of plaintiffs, their officers, agents and servants to and from the said premises above described."

The action was brought to obtain a perpetual injunction. The complaint and supplementary affidavits were to the effect that the New York Central and Hudson River Railroad Company owns,

keeps and maintains land to the width of about forty feet contiguous to its Albany depot, and on the west side thereof, extending from Maiden Lane to Steuben street, as a private street and way of approach for its passengers, on foot and in vehicles, going to and from said depot and the railroad trains, and for no other purpose or purposes whatsoever. That the said railroad company, for the purpose of preventing annoyance to its passengers, from the solicitation of the defendants, hackdrivers, and divers other persons engaged in the business of hackdriving, by going on said premises and soliciting business of passengers, and also for the purpose of providing a safe and orderly service and accommodation for its passengers, entered into a contract with The Consolidated Transfer Company, one of the plaintiffs, by which it granted, for a valuable consideration, the exclusive privilege of going upon its said private way with hacks, carriages and other vehicles for the purpose of obtaining and soliciting the patronage of said railroad passengers, who might wish carriages, the said transfer company agreeing to conduct its business in a proper and orderly manner and at a reasonable rate for the services it rendered, and to preserve good order in all respects on the said private way, so that passengers could go to and from the said depot safely and without molestation and annoyance. That the defendants had, at various times and without the permission of the plaintiffs, and against their remonstrance and prohibition, entered upon the said private way for the purpose of obtaining employment by passengers, and against the remonstrance and orders of the plaintiffs remained upon the said private way soliciting employment by passengers, and by their unlawful acts and presence obstructed the said private way and interfered with the conduct of the business of the plaintiffs, and, being ordered to cease such unlawful acts, refused to do so, and continued in the commission of said unlawful acts to the plaintiffs' great injury.

The defense interposed was to the effect that the defendants are competitors and rivals of The Consolidated Transfer Company, one of the plaintiffs, in the business of carrying passengers and their baggage for hire to and from the railroad depots, hotels, private residences and all other places in the city of Albany, and that as such common carriers they are entitled to the same rights and privileges on the depot grounds, in carrying on their business, as such

Consolidated Transfer Company, and any agreement giving such company exclusive rights and privileges is contrary to the statute and void.

*John W. Walsh, George T. Kelly* and *Edwin Countryman,* for the appellants.

*Hamilton Harris,* for the respondents.

PUTNAM, J.:

The decision of this case depends upon the construction to be given to the following provision contained in section 34, chapter 565, Laws of 1890, as amended by chapter 676 of the Laws of 1892, viz. : " No preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its grounds, shall be granted by any railroad corporation to any one of two or more persons, associations or corporations competing in the same business or in the business of transporting property for themselves or others."

The defendants claim that under the statutory provision above quoted they have the right to go upon the grounds of plaintiff described in the complaint, for the purpose of soliciting employment in their business as hackmen of passengers arriving on trains on plaintiff's road, and that plaintiff cannot exclude them therefrom.

It is clear that the defendants have no right upon plaintiff's premises unless such a right is conferred by the above-quoted statutory provision. They do not claim to go thereon for the purpose of transacting any business with the plaintiff as a common carrier or otherwise. They wish to enter on said premises for the purpose of contracting with passengers leaving plaintiff's depot.

They do not desire to employ plaintiff to carry passengers or freight or to make any contract whatever with it. They wish free access to the premises in question for the transaction of business with other parties.

The order from which the appeal is taken was not intended to prevent the defendants from leaving passengers or freight at plaintiff's depot or from taking passengers or freight therefrom. But it prohibits defendants' hacks and employees from remaining on plaintiff's premises; from making such premises a standing ground, for

the purpose of soliciting patronage while so engaged in seeking employment on said premises, they having no contractual relations with plaintiff or its passengers.

Does the statutory provision above quoted prevent the plaintiff, under the circumstances, from controlling the use of its grounds? Under a somewhat similiar statutory provision and in a similar case the Supreme Court of Massachusetts in *Old Colony R. R. Co.* v. *Tripp* (147 Mass. 35) held the following doctrine : " The defendant was allowed to use the depot for any business that he had with the plaintiff. But he had no business to transact with the plaintiff. He had no merchandise or baggage to deliver to the plaintiff or to receive from it. His purpose was to use the depot as a place for soliciting contracts with incoming passengers for the transportation of their baggage. The railroad company may be under obligation to the passenger to see that he has reasonable facilities for procuring transportation for himself and baggage from the station where his transit ends. What conveniences shall be furnished to passengers within the station for that purpose is a matter wholly between them and the company. The defendant is a stranger both to the plaintiff and to its passengers, and can claim no rights against the plaintiff to the use of its station, either in his own right or in the right of passengers. * * * The statute in providing that a railroad corporation shall give to all persons equal facilities for the use of its depots, obviously means a use of right. It does not intend to pre-scribe who shall have the use of the depot, but to provide that all who have the right to use it shall be furnished by the railroad com-pany with equal conveniences. The statute applies only to relations between railroads as common carriers and their patrons. It does not enact that a license given by a railroad company to a stranger shall be a license to all the world."

While the question involved is not free from doubt, and the Massachusetts statute differs somewhat from ours, we are inclined to adopt the views above quoted as applicable to this case and as expressing our views thereon.

We should regret to be compelled to give any other construction to the statute in question. It would be unfortunate if railroad cor-porations should have no control over their premises as against hackmen. A construction of the statute is to be regretted that

would give in our cities and villages all the hackmen of the place the absolute right to intrude upon and make a stand of the premises of railroad corporations for the purpose of soliciting passengers. That in fact allows a mob of hackmen around railroad depots and prevents a railroad corporation from adopting proper regulations to protect its passengers from undue solicitation and annoyance when leaving its grounds. (See, also, *Jencks* v. *Coleman*, 2 Sumn. 221; *Barney* v. *O. B. & H. Steamboat Co.*, 67 N. Y. 301.)

The meaning of the statutory provision under consideration is, as above suggested, not entirely clear, but we think it should be construed to mean that no preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its ground, shall be given by railroad corporations to any one of two or more persons competing in the same business or in the business of transporting property, *while having contractual* relations with said railroad corporation as a common carrier.

Since writing the above we have been referred to the very able and exhaustive opinion of Justice GREEN in the case of *The N. Y. C. & H. R. R. R. Co.* v. *Sheeley and Others* (not reported), in which the learned justice reaches a conclusion sustaining an action against hackmen similar to this.

It follows that the order should be affirmed, with costs and disbursements.

HERRICK, J., concurred; MAYHAM, P. J., not acting.

Order affirmed, with ten dollars costs, printing and other disbursements.