CHARLES W. BROWN, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Hackman not protected by chapter* 676 *of the Laws of* 1892 — *right of a railway corporation to give a coach company exclusive privileges upon its premises.*

Assuming that the business of a common hackman comes under the general definition of a common carrier, it does not come within the protection of the provisions of chapter 676 of the Laws of 1892.

A contract was made between a railroad company and a coach company whereby the latter, for a valuable consideration, was given the exclusive right to have its agents upon the trains of the former running to and from a certain city, for the purpose of soliciting business for the coach company, and also the exclusive right to enter the yards of the railroad company with its carriages and to there solicit and receive passengers who desired to go to any point in such city. The charges of the coach company were regulated by such contract, and were reasonable.

*Held,* that such contract was not against public policy,

That an order restraining the railroad corporation from granting such coach company, which was a competitor for such business with others, an exclusive right to transact its business as a common carrier in the depot, buildings, yards and grounds of the railroad company was improperly granted and should be reversed

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from an order of the Supreme Court, made at the Erie County Special Term and entered in the office of the clerk of the county of Niagara on the 19th day of July, 1893, enjoining the defendant from giving the Miller & Brundage Coach Company (Limited) a preference or exclusive right to transact its business as a common carrier in the depots, buildings, yards and grounds of the defendant.

*Albert A. Harris,* for the appellant.

*P. F. King,* for the respondent.

LEWIS, J.:

Defendant is a railroad corporation engaged in the business of a common carrier. It has at the city of Niagara Falls a passenger station at which it receives and discharges its passengers with their baggage. It has a yard adjoining the depot around which it has erected a fence in such a manner as to prevent access thereto except through gates provided for that purpose. There is a platform along

one side of the yard which leads from the stopping place of the cars to the passenger depot. The defendant has entered into a written agreement with the Miller & Brundage Coach Company (Limited), by the terms of which, for a valuable consideration, paid by the coach company, it is given the exclusive right to have its agents upon the defendant's trains of cars running to and from the city of Niagara Falls for the purpose of soliciting business for the coach company; the contract also gives said coach company the exclusive right to enter said yard with its coaches and carriages and solicit and receive any passengers stopping at said station who may desire to go to points in the city of Niagara Falls. Passengers after alighting from defendant's cars pass along the platform mentioned, adjacent to. the yard, where they may, if they so desire, enter the Miller & Brundage carriages and coaches and be driven out through the gates onto the street.

The plaintiff is the owner of two carriages with teams of horses, and is engaged with them in the transportation of passengers about the city of Niagara Falls. He and others engaged in like business are not allowed to enter the yard; they stand with their carriages upon the street near the depot, and there solicit such passengers as have not already been secured by the Miller & Brundage Company. Manifestly, the situation gives to the coach company great advantages over the other carriages in securing business. The defendant, although requested so to do, has refused to allow the plaintiff to go upon its trains to solicit patronage for his carriages, or to enter the yard mentioned for a like purpose. It does not appear that the plaintiff has offered to pay the defendant anything for the privileges which he desires; he claims that the preference thus given the Miller & Brundage Company is a violation of section 34 of chapter 565 of the Laws of 1890, as amended by chapter 676 of the Laws of 1892, and he commenced this action to restrain the defendant from giving to the said coach company the exclusive privileges mentioned, and he obtained at the Erie Special Term a temporary injunction restraining the defendant, its employees, etc., from "granting, permitting, maintaining or allowing to the Miller & Brundage Coach Company (Limited) at Niagara Falls, in competition with the plaintiff herein in the business of a common carrier, a preference or exclusive right or privilege to transact its business as

a common carrier upon or in the depot buildings, or upon or in its yards or grounds, and from hindering, prohibiting or excluding the plaintiff from entering the defendant's depot and buildings, going upon its grounds at Niagara Falls, transacting his business as a common carrier thereon, while and so long as the Miller & Brundage Coach Company shall be permitted and allowed by the defendant herein to enter its depot buildings, to go upon its grounds at Niagara Falls to transact the business of a common carrier thereon." ·

That part of the motion relating to soliciting upon defendant's cars was not granted.

No complaint is made of any preference being given to the Miller & Brundage Company in delivering the people at the defendant's depot who desire to take passage upon defendant's trains. They both enjoy equal privileges in that respect, as all passengers are required to pass through the depot and there procure their tickets before entering the yard to take the cars; they all, therefore, alight from carriages at the sidewalk in the public street.

Plaintiff bases his right to the order upon the statute referred to. The original section 36, as passed in 1850 (Chap. 140), provided that every railroad corporation "shall furnish sufficient accommodation for the transportation of all such passengers and property as shall within a reasonable time previous thereto be offered for transportation at the place of starting and the junctions of other railroads, and at usual stopping places established for receiving and discharging way passengers and freights for that train, and shall take, transport and discharge such passengers and property at, from and to such places on the due payment of the freight or fare legally authorized therefor, and shall be liable to the party aggrieved, in an action for damages, for any neglect or refusal in the premises." This section was amended by chapter 49 of the Laws of 1867 by adding thereto the following: "No preference for the transaction of business shall be granted by such railroad corporation to any one of two or more companies or associations competing in the business of transporting property for themselves or for others upon the railroad owned or operated by such corporation, either upon the cars or in the depots or buildings, or upon the grounds of such corporation;" and then follow provisions in reference to fair and impartial dealings with connecting railroads. This section was again amended by chapter 565 of the

Laws of 1890, but that amendment is not material to the questions under consideration.

It was again amended by chapter 676 of the Laws of 1892 (§ 34). So much of the section as is material to the questions under consideration, was, by this last amendment, made to read as follows: "No preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its grounds, shall be granted by any railroad corporation to any one of two or more persons, associations or corporations competing in the same business, or in the business of transporting property for themselves or others."

Plaintiff's business probably comes within the general definition of that of a common carrier, as stated in the text books and decisions. When speaking of common carriers, however, we do not ordinarily understand the hackman's business to be included in that term. He transports passengers here and there about the streets of a village or city, having no established route over which his conveyance runs, nor any specified time for making his trips. He assumes the right to let his rig for a day, or any other specified time to suit the convenience or wishes of his patrons. He gives the exclusive use of his carriage to a less number of persons than it can conveniently accommodate; he pursues his business if he finds it profitable to do so; if not, he remains idle. The obligations and duties of a common carrier are very different. "A common carrier is bound to accept and carry all such things as he publicly proposes to carry, for all persons who are ready and willing to pay him his customary price, provided he has the room in his boats, cars, coaches, carts or carriages for their conveyance, and he intends to set out on his accustomed journey." (*Johnson* v. *Midland R. R. Co.*, 4 Exch. 367; Addison on Law of Contracts [6th ed.], 468.)

"Carriers are called common or private; the latter being persons who undertake for the transportation in a particular instance only, not making it their vocation, nor holding themselves out to the public ready to act for all who desire their services." (Abbott's Law Dictionary, under head of "Carrier.") "A person who holds himself out to carry goods of all persons indiscriminately is a common carrier." (*Allen* v. *Sackrider*, 37 N. Y. 342; *Hollister* v. *Nowlen*, 19 Wend. 236.)

If it be conceded that the business of a common hackman comes

under the general definition of a common carrier, it does not follow that it comes within the protection of this statute.

It is apparent from a reading of the several acts referred to that the Legislature had in mind a very different class of common carriers. It is a matter of common knowledge that railroad companies had come to unjustly discriminate between rival shippers over their roads and between other connecting railroads; this practice had grown to be very detrimental to the business of the country, and especially to that of rival shippers of goods. These several acts were manifestly passed with a view to remedy this evil; they said to the railroads of the State, you shall not give any preference to any one of two or more persons, associations or corporations competing in the same business, who may wish to ship over your road. Then, again, the statute was intended to apply to such persons, associations and corporations, and those only, who have or wish to have business relations with the railroad company. It would have been quite absurd for the Legislature to have attempted to regulate the conduct of railroads towards those who neither have nor wish to have any business relations with them.

It does not appear that the plaintiff ever did or desired to do any business with the defendant. When the passengers alight from the cars at the Falls, defendant's contract relations with them are ended. The business the passengers employed it to do has been performed; the defendant owes them no further duty; it is after the relations of the passenger and the company are ended that the plaintiff's opportunity to deal with them commences; his business is to take the passenger in his carriage at that time and drive him about the city for a consideration.

The statute does not assume to reach such a case; it says no preference for the business of a common carrier upon its cars shall be granted, etc. What right has the plaintiff to demand that the defendant shall appropriate to him, for the purpose of carrying on his private business, its yard and cars, and that without paying anything for it? If the statute gives him what he claims, then each and every one of the fifty or more hackmen at the Falls are entitled to put their agents upon the defendant's cars to solicit business for their carriages, so long as the Miller & Brundage Company enjoys that right, and for which right it pays a consideration to defendant.

If the plaintiff be right in his contention, it logically follows that any one wishing to engage in the business of selling papers, pamphlets, stationery, etc., has the right, if he can find an unoccupied corner in a railroad depot, to insist upon occupying it for his business, if any other person shall be occupying a place in said depot for a like business by permission of the company.

The questions here presented have been the subject of discussion in the courts of this country as well as in those of England. There is some conflict in the authorities, especially in the courts of this country. The English Railway and Canal Traffic Act is in substance like the statute of this State. *Beadell* v. *The Eastern Counties Railway* (2 C. B. [N. S.] 509) was a complaint under the statute that the railway company refused to allow the complainant to ply for passengers at its station, it having granted the exclusive right of taking up passengers within the station to one Clark for the consideration of £600 per annum. The respondent allowed the complainant's cabs to enter the station for the purpose of putting down passengers, and then required him to leave the yard, and refused to allow the plaintiff the same privileges as were accorded to Clark. An injunction was refused.

In *Barker* v. *Midland Railway Company* (18 C. B. 45) it was held that the English statute refers entirely to persons using or desirous of using the railway or canal. JERVIS, C. P., in speaking for the court, said: "I am of opinion that the defendants are entitled to the judgment of the court. The declaration proceeds upon the assumption that the station is the private property of the railway company, subject to the rights of the public using the railway. It is not pretended that the plaintiff was using or seeking to use the railway. What right, then, can he have to say to the company, 'I will use your private property for my profit?' There is no pretense for the action; it has neither principle nor any color of authority to sustain it."

It was held in *Painter* v. *London, Brighton & S. C. R. R. Co.* (2 C. B. [N. S.] 701) that only those who use the railroad are entitled to complain.

In *Hole* v. *Digby* (27 Wkly. Rep. 884) the Midland Railway had granted one Richardson the exclusive right to provide omnibus and other carriage accommodations for passengers to and from the rail-

way station at Kittering. The yard was the private property of the company. Defendant was the servant of another 'bus owner, and by his master's orders entered with his 'bus and was sued for trespass. On appeal to the Queen's Bench, LUSH, J., said: "The station of a railway company is as much their property as the yard of a builder is his property, or that of any other person. And they have a right, if they please, to prevent any person who does not come for the purpose of being a passenger, or who, having been a passenger, is going out, or coming in there;" and he held that the defendant was a trespasser.

It is stated in *The Old Colony Railroad Company* v. *Tripp* (147 Mass. 35) that "a railroad corporation may contract with one to furnish the means to carry incoming passengers or their baggage and merchandise from its stations, and may grant to him the exclusive right there to solicit the patronage of such passengers, and such an agreement is not within the Pub. Sts. C. 112, sec. 188, which provide that such a corporation shall give to all persons or companies reasonable and equal terms, facilities and accommodations for the use of its depot and other buildings and grounds."

In *Burney* v. *Oyster Bay & Huntington Steamboat Co.* (67 N. Y. 301) the defendant was a common carrier of passengers and their baggage. Plaintiff was engaged in the express business. He attempted to solicit on defendant's boat the privilege of carrying the baggage of passengers from the steamboat landing. The exclusive privilege to do such soliciting had been granted to another. The plaintiff, refusing to desist, was ejected from the boat while he held a ticket which he had purchased on the boat, and he brought the action to recover damages for being thus ejected. The court held that while it is the general duty of a carrier of passengers to carry all persons who offer themselves, if there is room in the conveyance, upon being paid the usual fare, that he is at liberty to use his property in any way he may choose to promote his interests not inconsistent with the duty he owes the passengers; that he may manage and control his own property for his own profit and advantage to the exclusion of all other persons. Judge ANDREWS, in his opinion, says: "The sale of books, papers or refreshments are common incidents to the business of a carrier by certain modes of conveyance, and the carrier may avail himself of the

opportunity which his business gives him to supply the special wants of travelers in these and other respects, and appropriate to himself the profits of the business, and exclude third persons from entering the car or vessel to carry on the same business in opposition to him. In this, no right of a passenger is invaded."

" A carrier may establish for the convenience of passengers and for his own profit, on his car or vessel, an agency for the delivery of baggage of passengers, and exclude all other persons from entering to solicit or receive orders from passengers, in competition with the agency established by him. This is in no just sense a monopoly. It is saving to the carrier a legitimate advantage which his position and business give him." To the same effect in *Fluker* v. *Ga. R. R. Co.* (81 Ga. 461).

The cases of *Cravens* v. *Rodgers* (101 Mo. 247); *Montana Union Railroad Company* v. *Langlois* (9 Mont. 419), and *Kalamazoo Hack & Bus Company* v. *Sootsma* (84 Mich. 194) are in conflict with some of the doctrines of the authorities heretofore referred to, but we think the weight of authority sustains our construction of the statute.

The contract between the defendant and the Miller & Brundage Company is not against public policy. It conduces very much to the comfort and convenience of passengers visiting the Falls of Niagara, as those who have occasion to visit that place know. While upon the cars travelers are at liberty to make their arrangements for the use of carriages at the Falls, and when they alight from the train they can enter the carriages within the inclosure and avoid the unpleasant ordeal of running the gauntlet of a score or more of proprietors of carriages who are in waiting upon the street adjoining the depot soliciting employment. The charges for the use of the Miller & Brundage carriages as regulated in the contract are just and reasonable. No complaint is made in that respect.

The plaintiff, we think, failed to make a case entitling him to the order appealed from. It should be reversed, with ten dollars costs and disbursements of the appeal, and his motion denied, with ten dollars costs.

DWIGHT, P. J., and HAIGHT, J., concurred.

Order appealed from reversed, with ten dollars costs and disbursements, and motion for an injunction denied.