*transfer thereby created.* From the fact that she did not devise it arises the fact that his right to take was not destroyed. She was capable of forestalling and preventing an estate, but could not make such estate. She simply did not preclude the operation of law that matured it upon her death. But when one seeks for any act on her part it cannot be found. His estate did not spring from her forbearance. He is indebted to such forbearance for obtaining what *the law provides for him,* but nothing more."

And in 137 App. Div. 867, 122 N. Y. Supp. 585, he said:

"The words 'intestate laws' refer to the statutes governing the descent and distribution of a decedent's property. * * * That statute is the law's will for the disposition of property when its owner dies without a will. Upon inspection to discover what interest it transfers, it is found that it does not transfer an estate by the curtesy, but disclaims any effect upon such an estate. That is, it leaves it untouched as a matter that does not concern it. *Hence the taxing statute does not include it.*"

The case cited was affirmed by the Court of Appeals, without opinion, on February 23, 1911, and the analogy, facts, and reasoning are so applicable to the case at bar, and so controlling, as to require an affirmance of the decree of the surrogate.

Order of the Surrogate's Court of Kings county affirmed, with $10 costs and disbursements.

BURR, WOODWARD, and RICH, JJ., concur. JENKS, P. J., taking no part.

---

(71 Misc. Rep. 241.)

NEW YORK CENT. & H. R. R. CO. et al. v. RYAN et al.

(Supreme Court, Special Term, Westchester County. April 1, 1911.)

1. DEDICATION (§ 20*)—INTENTION—EVIDENCE.
  An intention by a railroad company to dedicate lands about its station to highway purposes could not be inferred from the fact that the lands were used by the general public for many years for street purposes in going to and from the station, where the land was during such time also used by the company in the operation of its business, and for the use and convenience of its patrons.
  [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 17–30; Dec. Dig. § 20.*]

2. CARRIERS (§ 16*)—USE OF CARRIER'S PREMISES—SPECIAL PRIVILEGES.
  A railroad company may make a contract with a hackman and give him special privileges on its premises in soliciting business and protect him in the enjoyment thereof against others engaged in the same business, subject to the rights of other hackmen to enter on the premises for the purpose of delivering passengers whom they may be carrying to the station, at the usual entrance thereto, and receiving patrons whom they may expect on the arrival of trains.
  [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 28–30; Dec. Dig. § 16.*]

Action by the New York Central & Hudson River Railroad Company and another against James Ryan and others. Judgment in accordance with opinion.

Brennan & Curran, for plaintiffs.
Harry T. Dykman and Henry C. Henderson, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

TOMPKINS, J. The plaintiff, the New York Central & Hudson River Railroad Company, operates the Putnam Division of its railroad system through the village of White Plains, and there maintains station buildings consisting of a passenger station and freight buildings, with a platform running about parallel with the railroad track which runs substantially north and south, and two other platforms; one being on the east side of and adjoining the passenger station and parallel therewith, and the other being at the southerly end of the passenger station, and running substantially east and west. East of the long platform, which runs parallel with the railroad track and north of the station, there is a strip of ground between said platform and the Orawampum Hotel property, and east of the passenger station buildings there is a large open square which has always been used as an approach to the station by the patrons of the railroad company, and from which is the principal entrance to said station or depot and the ticket office therein for people who are about to take trains at said station.

The plaintiff William Marshall is a livery stable proprietor, with whom the railroad company has made a contract, by which said Marshall is to have and enjoy certain hacking privileges at said station, and to have the exclusive right to stand his hacks along the platform which runs parallel with the plaintiff's railroad tracks at the north end of the passenger station. The defendants, about 40 in number, are hackmen who have been accustomed to carry passengers to and from the said station, and to solicit patrons upon the arrival of trains at said station. Prior to the commencement of this action, the railroad company put up a fence with gates in it around the large square on the east side of the station, and excluded or attempted to exclude therefrom these defendants, and assigned them and attempted to force them to occupy with their hacks positions on the south side of the platform at the south end of the said station, which runs east and west, and also to exclude them from the space on the east side of the platform running parallel with the said railroad tracks, and between said tracks and the Orawampum Hotel property, which the railroad company reserved for the plaintiff Marshall. It appears that thereafter these defendants attempted by force to pass in and out of the square on the east side of the station which had been fenced in as aforesaid, and to use the space allotted to the plaintiff Marshall, and this action is brought to restrain the defendants from interfering with the rights of the plaintiff Marshall, and from going with their horses and hacks within the square fenced off as aforesaid east of the station, and the space between the railroad tracks and the Orawampum Hotel property.

The New York Central & Hudson River Railroad Company is the owner, and has been for many years, of the square on the east side of this passenger station building, and the part which it fenced in as aforesaid, and it is also the owner, and has been for many years, of the strip of land east of and parallel with the tracks, and between them and the Orawampum Hotel property; and the said railroad company has been for many years in possession of both of those pieces of land, in the sense that it has paid taxes upon them, and used them in its freight and passenger business, while its patrons have used them in going to and from its station and trains.

[1] The defendants claim that those pieces of land have become public highways, inasmuch as they have been open to and used by the public for so many years. There is no claim of an express dedication and acceptance of these lands for highway purposes, but the defendants claim that an intention to dedicate and use the same for highway purposes is to be inferred from the fact that they have been used by the general public for so many years with the knowledge and consent of the railroad company, and ordinarily such an open and notorious user would justify, if not require, such an inference, but it seems to me that the fact that during all those years the lands in question were used by the railroad company in its business and for its convenience, and by its patrons in going to and from the station and trains, negatives such an intention on the part of the railroad company to dedicate the land for general highway purposes. In other words, during all of this time, the lands in question, owned and thrown open to the public by the railroad company, have afforded the patrons of the plaintiff's railroad one of their principal means of getting to and from the railroad station, and in that manner the plaintiff and its patrons have always used said lands, and that fact in my opinion destroys the effect of the proofs of public user on the part of the defendants, which otherwise would be sufficient to show an intention on the plaintiff's part to make a dedication of the land for general highway purposes.

To make out a dedication by the plaintiff railroad company, it must appear that its intention was deliberate and unequivocal to make the lands in question village streets, and to permanently surrender and abandon its property to the public use. The fact that the public used the lands in question for street purposes with the consent of the railroad company does not in my opinion establish an unequivocal and unmistakable intention to dedicate for street purposes, in view of the fact that during all of the time in question said lands were used by the railroad company in the operation of its business, and for the use and convenience of its patrons.

My conclusion, therefore, upon this branch of the case, is that the lands in question are not public streets, or public places, and that the fee thereof is in the railroad company, and that it may make reasonable rules and regulations for the use thereof by its patrons and these defendants, and all others who have business at its station or freight house.

[2] The law is well settled that a railroad company can make a contract with a hackman and give him special privileges, and protect him in the enjoyment thereof against others engaged in the same business. It was so held in the case of the New York Central & Hudson River Railroad Company and Consolidated Transfer Company against James Flynn and Others, 74 Hun, 124, 26 N. Y. Supp. 859, in which case the court, construing section 34 of the Railroad Law (Laws of 1890, c. 565), as amended by the Laws of 1892, c. 676, said, in effect, that:

"Section 34 of the railroad law (Laws 1890, c. 565, as amended by Laws 1892, c. 676) is to be construed as meaning that no preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its grounds, shall be given by a railroad corporation to any one of two or more persons competing in the same business, or in the busi-

ness of transporting property, who have contract relations with the railroad corporation as a common carrier. This statutory prohibition does not give all the hackmen of a city or village the absolute right to intrude upon or make a stand of the premises of a railroad corporation for the purpose of soliciting passengers, nor does it prevent a railroad corporation, which, by contract, has conferred upon a transfer company the exclusive privilege of going upon its premises with hacks for the purpose of soliciting passengers, from prohibiting other hackmen having no contract relations with the railroad corporation or its passengers from doing so."

In the case of Brown v. New York Central & Hudson River Railroad Company, 75 Hun, 355, 27 N. Y. Supp. 69, the facts were these: The defendant had a yard adjoining the depot, around which it had erected a fence in such a manner as to prevent access thereto, except through gates provided for that purpose. There was a platform along one side of the yard leading from the stopping place of the cars to the passenger depot. The defendant had entered into a written agreement with the Miller & Brundage Coach Company, by which for a valuable consideration the coach company was given the exclusive right to have its agents upon the defendant's trains of cars running to and from the city of Niagara Falls for the purpose of soliciting business. The contract also gave the coach company the exclusive right to enter the said yard with its coaches and carriages, and solicit and receive any passengers stopping at the said station who might desire to go to points in the city of Niagara Falls. Passengers, after alighting from defendant's cars, passed along the platform mentioned, adjacent to the yard, where they might, if they so desired, enter the Miller & Brundage carriages, and be driven out through the gate onto the street. The plaintiff and others engaged in like business were not allowed to enter the yard. They stood with their carriages upon the street near the depot, and there solicited such passengers as had not already been secured by the Miller & Brundage Company. In that case the plaintiff obtained at a Special Term temporary injunction restraining the defendant, its employés, etc., from "granting, permitting, maintaining, or allowing to the Miller & Brundage Coach Company, Limited, at Niagara Falls, in competition with the plaintiff herein in the business of a common carrier, a preference or exclusive right or privilege to transact its business as a common carrier upon or in the depot buildings, or upon or in its yards or grounds, and from hindering, prohibiting, or excluding the plaintiff from entering the defendant's depot and buildings, going upon its grounds at Niagara Falls, transacting his business as common carrier thereon, while and so long as the Miller & Brundage Coach Company shall be permitted and allowed by the defendant herein to enter its depot buildings to go upon its grounds at Niagara Falls to transact the business of common carrier thereon." The order appealed from was reversed, and the motion for an injunction denied. In the opinion, written by Lewis, J., the court says (page 362, 75 Hun, page 74, 27 N. Y. Supp.):

"The contract between the defendant and the Miller & Brundage Company is not against public policy. It conduces very much to the comfort and convenience of passengers visiting the Falls of Niagara, as those who have occasion to visit that place know. While upon the cars travelers are at liberty to make their arrangements for the use of carriages at the Falls, and, when

they alight from the train, they can enter the carriages within the inclosure and avoid the unpleasant ordeal of running the gauntlet of a score or more of the proprietors of carriages who are in waiting upon the street adjoining the depot soliciting employment."

The N. Y. C. & H. R. R. R. Co. v. Sheeley et al., 27 N. Y. Supp. 185, was an action brought by plaintiff to restrain the defendants from entering upon the plaintiff's station grounds at the city of Niagara Falls. It appeared from the complaint and affidavits upon which the injunction was granted that the plaintiff was a railroad corporation, and the defendants were hackmen; that the plaintiff had offered to admit the defendants to the privileges of its station grounds at Niagara Falls upon their complying with the terms and conditions exacted by the plaintiff. The defendants had not offered to comply with those conditions, claiming that they had a right to enter upon said grounds, and carry on their business, notwithstanding the plaintiff's protest, by virtue of the provisions of section 34 of the railroad law. An injunction was granted pending the action restraining the defendants from the acts complained of, and a motion was made by the defendants to dissolve that injunction. A motion was made to dissolve the injunction, and it was held that the injunction was properly granted, and the motion to dissolve same was denied. Green, J., writing the opinion, says:

"The injunction was properly granted. The complaint and affidavits upon which the injunction was granted, if true, establish a right to the relief prayed for. Where the injury resulting or likely to result is irreparable in its nature, either in respect of being compensated pecuniarily, or because from the circumstances no estimate of the damages can be made with reasonable accuracy, the inadequacy of legal remedies is sufficiently apparent. A temporary injunction will be granted in the first instance pending an adjudication of the legal rights, though the same may be in dispute. 1 Spell. Extr. Relief, § 336. The irreparable damages here meant usually result from repeated wrongs of a continuing character, resulting in damages which cannot be estimated by any accurate standard, and can only be conjectured. Against such wrongs as these, courts of equity rarely refuse to grant relief by injunction. Courts of equity do not ordinarily restrain the commission of a mere trespass. There must be some great vexation from continued trespass, or some irreparable mischief which cannot easily be measured by damages. Id. § 340. Where numerous acts are being committed, and their continuance threatened, by one person on the land of another (and, a fortiori, by many persons), which acts constitute trespass, and the injury resulting from each is, or would be, trifling in amount as compared with the expense of prosecuting actions at law to recover damages therefor, injunction will lie to restrain the trespass, not alone because of the irreparable nature of the general course of wrong, nor yet for the reason that a multiplicity of suits or protracted litigation would result, but for both reasons; in other words, because a law-court furnishes no adequate means for complete redress, while in equity, not only may the whole matter of compensation be settled, but the present and future rights of the parties determined and adjudicated in the same proceeding."

In N. Y. C. & H. R. R. Company and Moses McMullen v. Warren, 31 Misc. Rep. 571, 64 N. Y. Supp. 781, the facts disclosed by the papers were that the plaintiff railroad company, as lessee of the West Shore Railroad, was in possession of certain lands about the railroad station at Marlborough, Ulster county, N. Y., and maintained said grounds for its railroad business, for the accommodation of the public

traveling on its railroad, and laid out and maintained a private road-way and approaches to the said station over said lands for passengers on foot or in vehicles going to or departing from said station; that for the purpose of preventing annoyance to passengers from the de-fendant and other persons engaged in that business—i. e., stage and hack drivers—the plaintiff railroad company entered into a contract with the plaintiff McMullen by which there was granted to ·McMullen, for a valuable consideration, the exclusive privilege of going on said lands with vehicles for the purpose of bringing intending passengers to said station, and by the said agreement McMullen agreed to fur-nish at all times a suitable number of vehicles for receiving passengers and baggage, and carrying them to and from said station. Betts, J., writing the opinion of the court, says (page 578, 31 Misc. Rep., page 786, 64 N. Y. Supp):

"Upon the facts as they now appear, an injunction is denied the plaintiffs, restraining defendant until the trial of this action from delivering intending passengers (of the railroad company) by whom he has been employed for that purpose upon the grounds of the railroad company provided for the use of arriving and departing passengers and vehicles, and is also refused for re-straining defendant from going to said place after passengers arriving on in-coming trains or whom he expects to arrive on incoming trains who had pre-viously employed him to meet them at the station for the purpose of carrying them to their homes or places of destination. The defendant, however, after depositing his passengers for the incoming train, may not loiter upon the premises of the railroad company against its will, or in any way obstruct or interfere with the business of either of the plaintiffs or of other persons·hav-ing business there, and must, if so directed, depart from said premises until about the time of the arrival, or the schedule time of the arrival, of the train upon which he expects the person or persons, who had previously employed him, to arrive."

In the case of Alexandria Steamboat Company v. N. Y. C. & H. R. R. Co., 18 App. Div. 527, 45 N. Y. Supp. 1091, it was held:

"A railroad company whose railroad terminates at a point at which the boats of two rival steamboat companies touch may enter into an agreement with one of said steamboat companies, permitting it to enjoy the use of said railroad company's terminal facilities, without thereby becoming obliged to permit the other steamboat company to use and enjoy its terminal facilities. Neither section 7 of chapter 564 of the Laws of 1890, providing that 'no stock corporation shall combine with any other corporation for the prevention of competition,' nor section 7 of chapter 688 of the Laws of 1892, providing that 'no stock corporation shall combine with any other corporation or person for the creation of a monopoly of the unlawful restraint of trade, or for the pre-vention of competition in any necessary of life,' can be invoked to compel a railroad company which, for a valuable consideration, has concluded a traffic contract with a steamboat company, by which each becomes the agent of the other for the transportation of passengers and freight, to enter into a similar arrangement, with a rival steamboat company and afford it the same facili-ties. The refusal of the railroad company to thus become in effect the agent of the rival steamboat company for the transportation of passengers and freight is not a violation of section 47 of chapter 565 of the Laws of 1890, requiring a railroad company, when supplied by a steamboat company with the latter's tickets and checks, to sell the tickets and account for the pro-ceeds thereof, and to make use of such checks. The provisions of section 34 of chapter 676 of the Laws of 1892 that 'no preference for the transaction of the business of a common carrier upon its cars, or in its depots or buildings, or upon its grounds, shall be granted by any railroad corporation to any one of two or more persons, associations or corporations, competing in the same

business, or in the business of transporting property for themselves or others,' do not authorize a rival steamboat company to occupy the terminal facilities of a railroad company upon the same terms as those enjoyed by another steamboat company with which the railroad company has contractual relations."

In the case of Barney v. Oyster Bay & Huntington Steamboat Company, 67 N. Y. 301, 23 Am. Rep. 115, the syllabus reads:

"A common carrier of passengers may establish on his car or vessel an agency for the delivery of passengers' baggage, and may exclude all other persons from entering upon it for the purpose of soliciting or receiving orders from passengers in competition with such agency. Plaintiff, an expressman, sought passage upon defendants' boat for the purpose, among other things, of taking, while on the boat, orders from the passengers for the delivery of baggage. Defendants had granted the privilege of transacting this business upon the boat to another, and as plaintiff continued it after having been directed to desist, and refused to promise to discontinue it, defendants caused him to be ejected from its boat, and refused him passage. In an action to recover damages, held the defendants' action was justifiable, and that it was not liable."

Donovan v. Pennsylvania Company, 199 U. S. 279, 295, 26 Sup. Ct. 91, 95, 50 L. Ed. 192, was an appeal from an injunction order enjoining the defendants from entering the passenger station of plaintiff to solicit business from incoming passengers for cabs, carriages, express wagons, or hotels. The railroad company had granted to the Parmalee Transfer Company the exclusive privilege of going into its station for those purposes. In affirming the decree of the court below Mr. Justice Harlan, writing the opinion, said:

"It was therefore its duty to see to it that passengers were not annoyed, disturbed, or obstructed in the use either of its station house or of the grounds over which such passengers, whether arriving or departing, would pass. It was to that end—primarily as we may assume from the record—that the Pennsylvania Company made an arrangement with a single company to supply all vehicles necessary for passengers. We cannot say that that arrangement was either unnecessary, unreasonable, or arbitrary. On the contrary, it is easy to see how in a great city and in a constantly crowded railway station such an arrangement might promote the comfort and convenience of passengers arriving and departing, as well as the efficient conduct of the company's business."

And on pages 304 and 305, 199 U. S., page 99, 26 Sup. Ct. (50 L. Ed. 192):

"It only remains to inquire as to the competency of a court of equity to give a railroad company the relief it sought. The defendants insist that equity cannot properly interfere. But the inadequacy of a legal remedy in such a case as this one is quite apparent. According to the record, the attempt of the defendants, despite the objections of the company, to use its station house and depot grounds for the purpose of meeting passengers and soliciting their patronage, was a constant, daily, almost hourly occurrence. The case was one of a continuing trespass, involving injury of a permanent nature. A suit at law could only have determined the particular wrong occurring on a particular occasion, and would not reach other wrongs of like character that would occur almost every hour of each day, as passengers arrived at the station of the company. The same state of things existed in reference to such use of the sidewalk in front of the passenger station as unduly interfered with the rights of passengers arriving and departing. Only a court of equity was competent to meet such an unusual emergency, and by a comprehensive decree determine finally and once for all the entire controversy between the

parties—thus avoiding a multiplicity of suits and conserving the public interests. No remedy at law would be so complete or efficacious as a suit in equity in such a case as this one. Coosaw Mining Co. v. South Carolina, 144 U. S. 550 [12 Sup. Ct. 689, 36 L. Ed. 537]; Smyth v. Ames, 169 U. S. 466, 517 [18 Sup. Ct. 418, 42 L. Ed. 819]. The Supreme Court of Illinois well said in Chicago General Ry. Co. v. C., B. & Q. R., 181 Ill. 605, 611 [54 N. E. 1026]: 'When irreparable injury is spoken of, it is not meant that the injury is beyond the possibility of repair, or beyond the possibility of compensation in damages, but it must be of such constant and frequent recurrence that no fair or reasonable redress can be had therefor in a court of law.' See, also, Newell v. Sass, 142 Ill. 104, 115, 116 [31 N. E. 176]; Carpenter v. Capital Electric Co., 178 Ill. 29, 36 [52 N. E. 973, 43 L. R. A. 645, 69 Am. St. Rep. 286]; Lowery v. Pekin, 186 Ill. 387, 398 [57 N. E. 1062, 51 L. R. A. 301].

It is therefore plain from the foregoing authorities that the railroad company had a right to make the contract with the plaintiff Marshall, and that Marshall thereunder is entitled to be protected in his use and enjoyment of the privileges granted him thereby. The defendants, however, have a right to use the square east of the passenger station, which is the principal approach to the depot, for the purpose of meeting and conveying their patrons from trains upon their arrival at the station, and to deliver passengers to departing trains, but they cannot loiter there nor stand there to solicit business. The railroad company cannot deny its patrons the ordinary and usual means of going to and from its trains, nor can it deny them the privilege of selecting their own hackmen, nor can it refuse the hackmen the right to deliver their patrons at the usual entrance to the station, and take them therefrom. There can be no discrimination by the railroad company in its treatment of its passengers respecting the manner of getting to and from the trains at the station, and, inasmuch as the passengers have a right to choose their own hackmen, such hackmen must be given equal privileges with all other hackmen (whether they have special privileges by virtue of contracts with the railroad company or not) in the matter of delivering passengers at and conveying them from the depot or station. On the other hand, the railroad company has a right to assign the general hackmen, including these defendants, to positions south of the platform at the south end of the station which runs east and west for the purpose of soliciting business upon the arrival of trains.

So that the effect of this decision is, to hold: First. That the railroad company is the owner and in possession of and entitled to the reasonable control of the lands in question as approaches to its railroad buildings and trains. Second. That the plaintiff had a legal right to enter into the contract by which the plaintiff Marshall is to have and enjoy the exclusive privilege of standing his hacks and soliciting business at and along the platform which runs parallel to the railroad tracks, and between them and the Orawampum Hotel property, and the other buildings adjoining on the west, and north of the station building. Third. That the defendants for the purpose of soliciting new business must occupy the positions assigned to them by the railroad company south of the platform at the south end of the passenger station. Fourth. That the defendants have a right to enter upon and drive over the large square on the east side of the passenger station for

the purpose of delivering passengers whom they may be carrying to the station, and receiving patrons whom they may expect upon the arrival of trains.

Findings and judgment in accordance herewith will be made, but, inasmuch as the plaintiffs are not altogether successful, the judgment will be without costs.