NEW YORK CENTRAL RAILROAD COMPANY et al., Plaintiffs, *v.* ANTHONY ARTHELIA et al., Defendants.*

Supreme Court, Equity Term, Oneida County, October 20, 1947.

* See, also, *People* v. *Swald,* 190 Misc. 239, and *People* v. *Humphreys,* 190 Misc. 244.—[REP.

*James Kernan* for New York Central Railroad Company, plaintiff.

*Francisco Penberthy* and *Milton D. Nelson* for Sheldon A. Gordon, plaintiff.

*Willard R. Pratt* and *W. Roger Pratt* for Anthony Arthelia and others, defendants.

ZOLLER, J.  Plaintiffs have brought this action in equity and seek a judgment permanently enjoining defendants, their agents,

servants and employees "from soliciting patronage on the premises of the New York Central Railroad company, from parking their automobiles or taxicabs on the West Ramp, so-called, from entering the station building for the purpose of soliciting patronage, from congregating or loitering in and about the station building and West Ramp, or in any way interfering with the exclusive license granted to the plaintiff, Sheldon A. Gordon, to solicit patronage on the premises of the New York Central Railroad Company, and to park on or otherwise use the premises known as the West Ramp."

In the complaint it is alleged among other things, in substance, that the New York Central Railroad Company is a railroad corporation organized and existing under the laws of the State of New York and as such owns, maintains and operates certain railroads in the city of Utica and a railroad station therein known as the "Union Station", which consists of a station building, station platforms, subways, railroad tracks and yards and land and premises adjacent thereto; that adjacent to the westerly side of said station building and forming a part of said station premises are a sidewalk and a strip of land immediately adjacent thereto extending approximately 19.3 feet westerly from the curb of said sidewalk throughout its entire length, said sidewalk and adjacent strip of land being commonly known and referred to as the "West Ramp"; that said station building and/or premises, including the West Ramp, have been for many years and now are maintained by the said railroad company for the accommodation and convenience of its patrons and the traveling public and that for the greater comfort, convenience and safety of its patrons and the traveling public and in order to safeguard and protect its patrons and the traveling public from annoyance, molestation and hindrance by defendants and others engaged in the business of the carrying of passengers by automobile for hire, said railroad company has granted to the plaintiff Gordon the exclusive privilege of entering the station building and the exclusive use of said West Ramp for the purpose of soliciting and obtaining the patronage of persons desiring to be transported by automobile and the parking of his automobiles and taxicabs incident to such purpose.

Plaintiffs further allege that the defendants are the owners, operators, lessors and/or users of certain automobiles and/or taxicabs which are operated or driven in the city of Utica for hire; that for a long time past, without the permission of the plaintiffs or either of them and against their orders, rules and regulations, defendants have willfully and wrongfully entered

said station building for the purpose of soliciting patronage; that they congregate and loiter therein and obstruct the station doors and exits; that they have parked and continue to park their taxicabs on said West Ramp in the conduct of their business and have solicited and continue to solicit patronage in the station building and on the West Ramp; that by their conduct defendants have annoyed and inconvenienced the patrons of said railroad company and the traveling public and have obstructed and interfered with the plaintiffs in the conduct of their business. Plaintiffs further allege that they have suffered damages by reason of the conduct of the defendants and in their prayer for judgment they demand damages in the several amounts specified therein. However, upon the trial it was agreed between counsel for the plaintiffs and counsel for the defendants that their respective claims for damages would be waived.

Defendants offered no proof upon the trial and rested their case upon the conclusion of plaintiffs' proof. Counsel, however, entered into a written stipulation as to certain agreed facts, which action on their part simplified and shortened the trial. Because of the importance of this lawsuit not only to those directly involved but also to the residents of the city of Utica and the public generally, I deem it advisable to incorporate in this decision the provisions of said stipulation, which are as follows:

"1. That the defendants admit the allegations of the complaint numbered '1', '2', '3', '4' and '7'.

"2. That the defendants admit the allegations contained in the paragraph of the complaint numbered ' 5 ', except that the question is submitted to the court as to whether or not the sidewalk and strip of land immediately adjacent thereto and extending approximately 19.3 feet westerly from the curb of said sidewalk throughout its entire length northerly from Main Street and known as the West Ramp has been dedicated to the public.

"3. That the defendants admit that the plaintiff, New York Central Railroad Company, for a long time past, has granted and now grants, to plaintiff, Sheldon A. Gordon, the exclusive privilege of entering the station building and the exclusive use of the West Ramp, so-called, for the purpose of soliciting and obtaining the patronage of persons desiring to be transported by automobile and the parking of his automobiles and taxicabs incident to such purpose.

"4. That the following facts are stipulated into the record:

" a. That the New York Central Railroad Company for upwards of twenty-five years has granted pursuant to written

contract, exclusive licenses to various taxicab owners, including the plaintiff, Sheldon A. Gordon, to park their taxicabs or hacks at the curb on the west side of the Union Station from Main Street northerly to the northerly end of the marquee over the west entrance to said station and has reserved the use of said area to its respective licensees to the exclusion of all others and has marked or caused to be marked the curb and placed or caused to be placed signs in said area to such effect.

"b. That northerly of said marquee on the west side of the station, the railroad has designated an area for the parking of cars for patrons of the New York Central Railroad, and northerly thereof and immediately southerly of the railroad tracks has designated an area for a loading zone for the restaurant located in the New York Central station.

"c. That northerly of the building on Main Street which is located immediately west of the city Alley, and westerly of said Alley is an area owned by the New York Central Railroad, which said area is and has been used in its business and for its convenience and its patrons and which area now is and for some time past has been designated by the New York Central Railroad as a parking area for its use and that of its patrons going to and from said station and trains.

"d. That the patrons of said railroad in driving their cars to said parking areas have driven their cars from Main Street northerly over the city Alley and/or portions of the 19.3 foot strip of land owned by the New York Central Railroad Company located east of the city Alley and known as the West Ramp.

"e. On the south side of the Union Station property at/or near the southwest corner of the building, there is a bus zone where the New York State Railway which operates a bus service throughout the City of Utica may pick up and discharge passengers.

"f. That easterly of the bus zone on the southerly side of said station there is an area designated for general taxi stands, which taxi stands are available for use by any licensed taxicab for the purpose of parking, picking up and discharging passengers.

"g. That easterly of said taxi stands on the southerly side of the station and from there extending to the southeast corner of the said station is an area designated for parking by patrons of the New York Central Railroad.

"h. That the easterly side of the station faces First Street where parking areas are designated for the general public.

"5. That all of the land located easterly of the city Alley northerly of Main Street and westerly of First Street has been assessed to the New York Central Railroad Company for many years last past and the taxes assessed thereon have been paid to the city by the New York Central Railroad Company.

"6. That the New York Central Railroad Company is the owner in fee simple absolute of the property situated easterly of the center line of the 25 foot city Alley, (subject to a public easement over the easterly 12.5 feet of said Alley) northerly of the north line of Main Street and westerly of the west line of First Street, as shown on Exhibits 1 and 3, except that the question is submitted to the court as to whether or not the 19.3 foot strip of land lying west of the curb on the westerly side of the station has been dedicated to the public.

"7. That the defendants and each of them for upwards of one year last past, without the permission of the plaintiffs or either of them and against their express and known prohibitions and orders have almost daily entered the said New York Central Station building for the purpose of obtaining taxi fares for their respective taxicabs and employment by passengers of the railroad and for the purpose of pursuing a taxicab business; that in obtaining said patronage for their respective taxis the defendants and each of them separately and in groups at various times have stood or placed themselves in the aisles, lobby, corridors and exits of said station building; that the defendants and each of them when and while so stationing and placing themselves in said station did receive and obtain patronage for their respective taxicabs from passengers of the railroad; that the entering of the station building by the defendants and each of them for the purpose of obtaining fares for their respective taxicabs was not for any prearranged meeting or appointment with a passenger of the railroad, except on some occasions, but was for the purpose of obtaining fares for their respective taxicabs from anyone who might pass their way.

"That the defendants and each of them for a long time past without the permission of the plaintiffs or either of them and against their expressed orders have parked and continue to park almost daily their respective taxicabs on the West Ramp so-called in the conduct of their business where they have held themselves out for taxicab service and have received patronage for their respective taxicabs.

"8. That the facts and admissions above set forth be and they hereby are stipulated into and as a part of the record in this

case to be added to the testimony already introduced in evidence herein."

Consequently, the facts of three material and important allegations of the complaint are to be considered as proven, namely, (1) the ownership in fee simple by the railroad company of the Union Station and station premises including the so-called West Ramp. (2) The granting to Gordon by the railroad company of the exclusive privilege of entering the station building and the exclusive use of the so-called West Ramp for the purpose of soliciting the patronage of persons desiring to be transported by automobile from said station building and the parking of his automobiles and/or taxicabs incident to such purpose. (3) The various acts and activities of the defendants complained of.

It is a contention of counsel for defendants that plaintiffs have an adequate remedy at law in that any attempt on the part of the defendants or any one of them to solicit taxicab business within the Union Station is a violation of the Taxicab Ordinance of the City of Utica enacted several years ago and still in effect, particularly subdivision a of section 21 thereof which reads as follows: "No taxicab driver shall solicit passengers while cruising, nor shall any taxicab driver leave his cab on any stand for the purpose of soliciting except at the New York Central Railroad Station where a driver may solicit 10 ft. from his car."

Defendants by their stipulation of facts have admitted that they for upwards of a year have almost daily entered said Union Station for the purpose of securing taxi fares in connection with their taxicab business and have stood in groups in the aisles, lobby, corridors and exits of said station and therefore concede that they have violated said section on many occasions and by doing so have committed a continuing trespass involving injury of a permanent nature.

Obviously, any legal remedy under these circumstances is clearly inadequate as a suit at law could only determine the particular wrong occurring on a particular occasion and would not reach other wrongs of like character which apparently have been occurring almost every hour of each day. Only a court of equity is competent to meet such an unusual emergency and by a comprehensive decree determine finally and once for all the entire controversy between the parties, thereby avoiding a multiplicity of suits. No remedy at law would be so complete or efficacious as a suit in equity under such circumstances. (*Donovan* v. *Pennsylvania Company*, 199 U. S. 279; *New York Central*

& H. R. R. R. Co. v. Ryan, 71 Misc. 241; New York Central & H. R. R. R. Co. v. Flynn, 74 Hun 124.)

A further contention of counsel for defendants is that plaintiffs have failed to come into a court of equity with clean hands, in that taxicab drivers employed by plaintiff Gordon have violated said subdivision a of section 21. Obviously, they have been more than ten feet from their cabs while inside the station, which is owned in fee simple by the railroad company and is private property subject to an easement or a right which the public may have to use it in connection with the business of the railroad company.

Subdivision b of section 21 of said Taxicab Ordinance reads in part as follows: "There shall be no solicitation on private or semi-private property except upon written permission of the owner or owners of said property, which written consent must previously be filed with the Commissioner of Public Safety. * * *"

The record is barren of any proof that plaintiffs have violated said ordinance in any respect. Moreover, whether there has been a violation either on the part of defendants or the plaintiffs is immaterial to the issues of this action.

A third contention, and this seems to be defendants' main argument, is that the sidewalk on the west side of the station and the strip of land immediately adjacent thereto extending approximately 19.3 feet westerly from the curb of said sidewalk and commonly known and referred to as the "West Ramp" have been dedicated to the public by reason of their use by the public over a period of some thirty-three years, although owned and maintained by the railroad company.

Concededly, many persons pass over this area daily and even hourly, but, likewise concededly, they are patrons of the railroad or its licensees or concessionaires. The so-called West Ramp serves no other purpose. The west sidewalk and the 19.3-foot strip which constitute the West Ramp extend northerly from Main Street to the railroad tracks and the city alley, which is 25 feet wide and of which 12.5 feet is owned by the railroad company, is a dead-end street extending from Main Street on the south to the railroad tracks on the north, a distance of about 200 feet. The Union Station building extends substantially the whole length of the ramp and alley on the east and at about the center of the building on its west side adjacent to the West Ramp is an entrance that opens into a corridor which leads directly to the station lobby or interior and from which

corridor there also is a stairway to offices of the railroad company on the upper floors. Over this entrance is a marquee.

Plaintiff Gordon has a written contract which gives him the exclusive privilege or license to park his taxicabs at the curb on the west side of the station from Main Street northerly to the northerly end of said marquee. For upwards of twenty-five years plaintiff railroad company has granted by written contract such a privilege or license to various taxicab owners and has reserved the use of said area to its licensees to the exclusion of all others and has had the curb marked and signs placed in said area to indicate such exclusive use. The railroad company has designated an area northerly of said marquee on the west side of the station for the convenience and use of its patrons for parking their cars and northerly of that area and immediately southerly of the railroad tracks it has designated an area as a loading zone for the restaurant which is located inside the station at that point.

On the west side of the alley is a privately owned building which fronts on Main Street. Northerly of the building and westerly of the alley is a vacant lot owned by the railroad company and used for parking purposes by its employees and its patrons.

The Union Station was built in 1914. At that time the railroad company paved the 19.3-foot strip and the easterly half of the alley with granite or sandstone blocks. This type of pavement remained until 1944 when the city paved the alley and the 19.3-foot strip with asphalt and the cost of paving the strip and one half of the alley was paid by the railroad company.

The proof shows that, since the Union Station was built in 1914, the so-called West Ramp has been used by the public as one of the approaches to the station and has been maintained by the railroad company in connection with its business and for the convenience of its patrons.

Reviewing all the evidence, it is my conclusion that defendants have failed to establish that the so-called West Ramp or any portion of the railroad property west of the station building itself has become public property. On the other hand, it is my conclusion that said West Ramp and premises are private property owned by the New York Central Railroad Company.

It has been clearly and consistently established by the courts of this State that to make out a dedication by a railroad company it must appear that its intention was deliberate and unequivocal to make the lands in question a public street and to permanently surrender and abandon its property to the public

use. Our courts recognize the principle that because of the free use that is habitually made of railroad properties by the public it requires more definite and distinctive acts to establish adverse user of railroad property than would be required to establish adverse user of property devoted solely to private purposes. The fact that the public uses this railroad property for street purposes with the consent of the railroad company does not establish an unequivocal and unmistakable intention to dedicate it for street purposes, especially where such lands are used by the railroad company in the operation of its business and for the use and convenience of its patrons. Such use by the public is considered permissive and not adverse. (*Harrison* v. *New York Central R. R. Co.*, 255 App. Div. 183; *Lehigh & H. R. R. Co.* v. *Village of Warwick*, 164 App. Div. 55; *Concklin* v. *New York Central & H. R. R. R. Co.*, 149 App. Div. 739, appeal dismissed 207 N. Y. 752; *New York Central & H. R. R. R. Co.* v. *Village of Ossining*, 141 App. Div. 765, affd. 207 N. Y. 648; *New York Central & H. R. R. R. Co.* v. *Ryan*, 71 Misc. 241, *supra; Delaware, L. & W. R. R.* v. *Morristown*, 276 U. S. 182.)

The plaintiff railroad company as the owner of the Union Station and of the so-called West Ramp may lawfully grant to any one person or corporation the exclusive privilege or license to solicit patronage from its passengers and for such purposes may give to that person or corporation the exclusive right or privilege of entering its station and also of parking taxicabs or automobiles upon any portion of said West Ramp and as a corollary plaintiffs may exclude the defendants from the premises of the New York Central Railroad Company.

The law of this State is clear-cut and consistent in these respects. (*Barney* v. *Oyster Bay & H. Steamboat Co.*, 67 N. Y. 301; *Brown* v. *New York Central & H. R. R. R. Co.*, 75 Hun 355, appeal dismissed 151 N. Y. 674; *New York Central & H. R. R. R. Co.* v. *Flynn*, 74 Hun 124, *supra; New York Central & H. R. R. R. Co.* v. *Ryan, supra; New York Central & H. R. R. R. Co.* v. *Warren*, 31 Misc. 571; *Delaware, L. & W. R. R.* v. *Morristown, supra; Terminal Taxicab Co.* v. *District of Columbia*, 241 U. S. 252; *Donovan* v. *Pennsylvania Company*, 199 U. S. 279, *supra.*)

Plaintiffs in seeking their relief for a permanent injunction do not claim that they are entitled to one restraining any of the defendants from having a prearranged meeting with any traveler whereby it has been understood or agreed in advance that he would be met in the station upon his leaving a train. Plaintiffs, however, do seek an injunction restraining these defendants from maintaining a business in the station and on its

premises for the purpose of soliciting fares and patronage from travelers with whom they have had no arrangements or understanding whatsoever. It is also to be understood that there is no compulsion on the part of these plaintiffs that the traveling public use the Black & White Taxi Service, which is owned and operated by the plaintiff Gordon, or any other taxi service inasmuch as the railroad company has provided at its main entrance on the south side of the station on Main Street a substantial place for all other taxi drivers to park their automobiles.

My conclusion, therefore, is that plaintiffs are entitled to the relief which they seek in this action, namely, a judgment permanently enjoining the defendants, with the exception of the defendant Carmine Franco who was not served, their agents, servants and employees, as set forth in paragraph " 2 " of their prayer for judgment and hereinabove quoted.

Plaintiffs may have judgment accordingly.