In the Matter of the Application of VICTOR ARCANGEL, Petitioner, Respondent, for an Order against THOMAS L. HOLLING, Mayor of the City of Buffalo, Appellant.

Fourth Department, December 7, 1939.

*David Diamond, Corporation Counsel* [*Andrew P. Ronan* of counsel], for the appellant.

*Halpern & Friedman* [*Philip Halpern* of counsel; *Emil L. Cohen* with him on the brief], for the respondent.

TAYLOR, J.   The common council of the city of Buffalo, on June 13, 1939, by unanimous vote, adopted the following resolution: " That a lease be, and the same hereby is, authorized with Victor Arcangel for the rental of that portion of the new Administration Building set aside for restaurant purposes at the Buffalo Airport, at a rental of Nine Hundred Sixty Dollars ($960.00) per year, to be paid in equal monthly installments of Eighty Dollars ($80.00) on the first day of each and every month, in advance, and in addition thereto all charges for gas, water and electricity used by said lessee in the operation of the restaurant concession, said lease to be for a period of five (5) years, commencing when said building is ready for occupancy, and to contain the usual covenants and agreements for the giving of a bond, public liability or other insurance, and such other and further covenants which the Corporation Counsel shall deem necessary."   On June 27, 1939, the mayor returned this resolution to the common council with his written disapproval, wherein he stated that, in his opinion, the rental price was insufficient; that any such lease should establish a return to the city on a percentage basis with a maximum monthly guaranteed rental and that it appeared unwise to enter into a lease for a period of five years.   The common council then reconsidered the matter and, by unanimous vote, repassed the resolution of June 13, 1939, thus overriding the mayor's veto.   Thereafter, the corporation counsel prepared a formal lease in accordance with the resolution, which the petitioner executed but which the mayor refused to execute.   In this proceeding, which is brought under article 78

of the Civil Practice Act, the Special Term granted an order directing that the mayor execute and deliver the lease, from which order the mayor appeals.

The appellant concedes that he must execute the lease if it were legally authorized by the council but takes the position that the granting of this lease, without competitive bidding therefor, violated section 32 of chapter III of the City Ordinances and that the terms of the lease were not submitted to the airport advisory board in compliance with section 212 of the Charter.

Section 32 of chapter III of the City Ordinances, so far as here material, provides that the terms of any lease or license to use a city-owned building or part thereof, or the right to carry on a particular business therein, shall be in writing and shall be awarded only after competitive bidding therefor, if the yearly rental, revenue or income, to be received therefrom by the city, shall exceed the sum of $1,000. The appellant seeks to bring this lease within these provisions of the ordinance by asserting that the estimated charges that the lessee will be required to pay for water, gas and electricity which is consumed during the year in the operation of the restaurant, must be regarded a part of the yearly rental, revenue or income, and that when so regarded, the total yearly rental must necessarily exceed $1,000. The common council interpreted the words " rental, revenue or income " to mean only the amount to be received for the right to occupy the premises and its action in the matter should not be the subject of judicial interference, in the absence of a clear showing of illegality. The term " rent " will not be extended to include all payments which, by the terms of the lease, the tenant is bound to make, such as the payment of taxes, the cost of improvements or the obligation to perform collateral covenants. (*Duffy* v. *Central R. R. Co.*, 268 U. S. 55, 63; *City of Rochester* v. *Rochester Gas & Electric Corp.*, 233 N. Y. 39, 51; *Simonelli* v. *DiEricco*, 59 Misc. 485; *Bien* v. *Bixby*, 18 id. 415.)

Where the landlord furnishes gas, light and water in connection with and incidental to the tenancy, all for a specified weekly, monthly or yearly amount, to the ordinary person such amount would be regarded as rent but where the tenant must pay his own gas, light and water bills, to the ordinary person the amount of such charges would not be regarded as rent. Here, the lease specifies $960 as the yearly rent and requires the lessee to pay, in addition thereto, all charges for gas, water and electricity which may be consumed in the operation of the restaurant.

In view of these requirements, I believe that the action of the common council, in authorizing this lease without competitive bidding, did not violate the provisions of the ordinance.

The second ground which appellant urges for reversal is that the terms of the lease were not submitted to the airport advisory board in accordance with the provisions of section 212 of the Buffalo Charter. In considering this objection, reference to the applicable statutory and charter provisions is desirable.

Article 14 of the General Municipal Law confers upon municipalities the power to establish and operate airports and landing fields (§§ 350–355). Section 352 provides that the local legislative body of a city which has established an airport and set apart real property for such purpose, may construct, improve, equip, maintain and operate the same or may delegate such powers to any suitable municipal officer, board or body.

The Charter of the city of Buffalo regulates the control and use of city-owned real property. Section 517 provides that " A lease of, or a license to use, any real property or portion thereof owned by the city shall not be made unless authorized by the council." Section 518 provides that " Each conveyance or lease of real property owned by the city shall be executed by the mayor and shall have the corporate seal of the city affixed thereto." The Charter places the Buffalo airport, which is owned by the city, under the jurisdiction of the park department. The commissioner of parks, who holds office by appointment of the mayor subject to confirmation by the common council (§ 201), is charged with the care, control, management and maintenance of the city airport and with the regulation of its use (§ 202). This commissioner is required to appoint an airport advisory board, consisting of five members (§ 211), whose duties and powers are prescribed by section 212, which reads: " No rules or regulations proposed by the commissioner of parks, or the director of the airport, regulating the management and use of the airport, shall be adopted or put in force, until submitted to the board for its consideration. *No enlargement or extension or improvement of the airport and no letting of any concession, privilege or space thereon, or in connection therewith shall be made until after submission of all the terms of such letting for the consideration of the board.* The board shall have the power, of its own motion, to make recommendations to the commissioner of parks and to the director of recreation for the proper attainment of the design and purpose of any such airport." The provisions of this section, which forbid the letting of any concession or space in connection with the airport until after submission of the terms thereof to the airport advisory board for its consideration — I believe — clearly limit the power of the city to lease or license the use of any part of the airport. Although this board may act only in an advisory capacity, the provisions of this section, which require

that proposed matters in connection with the management and use of the airport be submitted to this board for its consideration, appear to be mandatory and are analogous to familiar statutory enactments which require that a public hearing be held as a prerequisite to official action. The evident purpose is to insure due consideration of the proposed action. If, therefore, the undisputed facts establish that the subject of the restaurant concession was not submitted to the advisory board, the appellant should not have been directed to execute the lease.

The petition alleges that the common council duly authorized the lease and sets forth the adopted resolution, the veto thereof by the mayor and the subsequent reconsideration and readoption of the resolution over the mayor's veto by unanimous vote of the common council, and the mayor's refusal to execute the lease which was prepared by the corporation counsel in accordance with the resolution, was duly signed by the petitioner and was delivered to the mayor for execution by him and for the affixing of the city seal. The answer denies, upon information and belief, that the lease was properly authorized by the common council and alleges specifically that the signing of the lease would be an illegal act and in violation of section 32 of chapter III of the City Ordinances. The mayor, in his affidavit which accompanied the answer, merely states that he is informed and believes that neither the terms of the resolution nor the terms of the lease were submitted to the airport advisory board in accordance with the requirements of section 212 of the Charter, but does not state the source of his information and the grounds for his belief. Such denials are insufficient. The invalidity of the resolution was a matter of defense which the petitioner was not bound to anticipate (*Matter of Universal By-Products Corp.* v. *Schwartz,* 216 App. Div. 311), and the foregoing denials and statements were insufficient to raise an issue of fact. (*Matter of Gardiner* v. *Harnett,* 255 App. Div. 106, 108; *Matter of Long Acre Electric Light & Power Co.,* 117 id. 80; affd., 188 N. Y. 361; *Matter of Lenc* v. *Zicha,* 223 App. Div. 158; affd., 250 N. Y. 541. See, also, *People ex rel. Frost* v. *N. Y. C. & H. R. R. R. Co.,* 168 id. 187, and *Eyre* v. *Wood,* 203 App. Div. 306.)

The mayor further states, upon knowledge, that the commissioner of parks addressed a communication to the common council on May 2, 1939, wherein he stated that the existing lease for the restaurant concession at the airport would expire on June 15, 1939; that the concession would be moved to the new administration building, and that " Upon the recommendation of the Airport Advisory Board I would respectfully request your Honorable Body to authorize me to prepare specifications and advertise for

sealed proposals for this concession. In this connection, it is the recommendation of the Airport Advisory Board, in which I concur, that Chapter III, Section 32 of the City Ordinances be amended to permit the letting of this airport concession on a percentage of gross receipts basis. It is the belief of this department that such procedure will result in a greater revenue to the City of Buffalo than the existing flat rate rental."

In view of these statements, the absence of proof — by affidavit of the commissioner of parks, the director of the airport or any member of the advisory board — that the subject of the lease had not been submitted to the advisory board, is significant and supports the ruling of the Special Term.

I believe that the grounds, which appellant urges for reversal, are without substance and that the order of the Special Term should be affirmed, without costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Order affirmed, without costs.