John S. Marsh, J.
This action was commenced by the plaintiffs, respectively the operator and owner of an “ independent ’ ’ taxicab duly licensed as such by the defendant, City of Buffalo, to obtain a declaratory judgment determining the contract between the defendants, City of Buffalo and Van Dyke Taxi and Transfer, Inc., for an exclusive taxicab concession at the Buffalo Municipal Airport is null and void, and that its enforcement against the plaintiffs should be enjoined. The plaintiffs’ contention that the contract between the defendants city and Van Dyke is illegal and unenforcible against them, as duly licensed taxicab operators, rests upon the following premises:
A. That the roadways and areaways of the Buffalo Municipal Airport constitute ‘ ‘ public ’ ’ streets and highways of the defendant city, and that any contract excluding the plaintiffs from the use thereof in their taxicab business constitutes an invalid partial revocation and restriction of the taxicab licenses issued to them by the City of Buffalo.
B. That the contract between the defendant city and Van Dyke was made and entered into without compliance with the statutory provisions found in section 352 of the New York General Municipal Law.
Upon the trial, the issues were submitted to this.court, upon an agreed stipulation of facts and with oral testimony in behalf of the plaintiffs to establish their pecuniary loss from the enforcement by the defendant city at the Municipal Airport of the contract granting exclusive taxicab privileges and rights to the defendant Van Dyke. There being no dispute in this action concerning the material and relevant facts, its disposition is dependent upon the determination of the questions of law involved in the respective claims of the parties.
The plaintiffs’ contention that the driveways, roads and areaways of the Buffalo Municipal Airport are “ public streets ” of the defendant city, dedicated to the public use, and *627 that any exclusion of the plaintiffs therefrom amounts to an unlawful partial revocation or restriction of their right to operate a taxicab in the city of Buffalo pursuant to the licenses for that purpose issued by the city, would seem to be clearly contrary to the undisputed facts and without support in law. The airport property is situated in the town of Cheektowaga and not within the corporate limits of the defendant city. It has been heretofore determined that the airport property, although owned by a municipal corporation, is subject to the levy of taxes thereon by the Town of Cheektowaga in the same manner as any other land owned by any individual or business corporation. (People ex rel. City of Buffalo v. Mazurowski, 294 N. Y. 370.) It is stipulated herein that the roads and area-ways of the Municipal Airport have never been dedicated as “ streets ” pursuant to the provisions of the Buffalo City Charter.
While the public for many years has used the airport roadways and areaways for purposes of ingress and egress, such user has not been adverse to or inconsistent with the defendant city’s proprietary ownership and control of the airport as private property, nor can such user be construed as effecting a change of private property into public streets of the defendant city (cf. Bolster v. Ithaca St. Ry. Co., 79 App. Div. 239; New York Central R. R. Co. v. Arthelia, 190 Misc. 555, 564; New York Central & H. R. R. R. Co. v. Ryan, 71 Misc. 241). The fact that the Municipal Airport is owned and operated by a municipal corporation rather than an individual or a business corporation does not change or affect the defendant’s rights to use and control its property in the same manner as has been uniformly recognized and upheld in other corporate owners. In the opinion of this court, the defendant city has the full right and power to take such action relating to the control and maintenance of the airport as it may deem proper, subject to any statutory restrictions, in the same way that any other owner of property could do, and such right may not be limited or lost because the city may have heretofore allowed all taxicabs to operate on its property.
The operation of an airport by a municipality is a proprietary rather than a governmental function, and the rights of a municipal corporation to grant exclusive concessions and privileges at airports for airline operations, parking lots and taxicabs have been uniformly sustained. (See Patton v. Administrator of Civil Aeronautics, 112 F. Supp. 817; Matter of Arcangel v. Holling, 258 App. Div. 180; Miami Beach Airline Service v. Crandon, 159 Fla. 504, Ann. 172 A. L. R. 1430.)
*628 Furthermore, this inherent right and power is clearly recognized by the express provision of section 352 of the New York General Municipal Law, wherein and whereby certain conditions and provisions are made applicable to the exercise of such right and power.
Upon the foregoing, this court holds that, as a matter of fact and of law, the ownership and operation by the defendant City of Buffalo of its Municipal Airport involves a proprietary function, and that the roadways and areas of the airport are private, property, the use of which the defendant city may regulate and restrict pursuant to its inherent and statutory power.
Conceding, therefore, for purposes of argument, that the plaintiffs’ taxicab licenses may not be partially revoked without cause, and that such licenses entitle the plaintiffs to pursue their business upon the public streets of the defendant city, yet such licenses do not confer any right to conduct a taxicab business on the private property owned by the municipal corporation no more than on the private property of any other owner. It follows, therefore, that the contract between the defendant City of Buffalo and Van Dyke for an exclusive taxicab concession at the Municipal Airport cannot be held null and void as an unlawful infringement upon or partial revocation of the rights conferred upon the plaintiffs to do a taxicab business upon the public streets of the City of Buffalo. On the contrary, the contract constitutes the exercise by the defendant city of its right and power, inherent as well as statutory, to enter into contracts for the conduct of business activities at an airport owned by it in its proprietary capacity.
There remains only for further consideration the question of whether or not the defendant city exercised its power in conformity with the provisions and requirements of section 352 of the General Municipal Law, or whether the procedure followed violated the statute, as the plaintiffs contend. The defendants urge forcefully herein that the plaintiffs have no standing to attack the legality of the contract between the city and Van Dyke in this action for a declaratory judgment, and that the relief which plaintiffs seek against this contract could only be granted in a so-called “ taxpayer’s action ”, brought pursuant to section 51 of the General Municipal Law. While the authorities relied upon by the defendants to support this ground for dismissal of the action are persuasive, yet the court prefers to rest its determination of this issue upon the merits involved, since it has concluded that the final contract under which the defendants, City of Buffalo and Van Dyke, are presently operating was *629 validly enacted in substantial conformity with statutory requirements.
Section 352 of the General Municipal Law, so far as pertinent and relevant herein, provides as follows:
“ The local legislative body of a city * * * which has established an airport or landing field and has acquired, leased or set apart real property for such purpose * * * may:
‘ ‘ 5. Lease, or sub-lease the real property or lease, contract or otherwise agree, on an exclusive or non-exclusive basis, for the entire operation of such airport or landing field, or of any part thereof, or for the rendering of various services, or the conduct of business activities, on or at said airport or landing field * * *. provided, however, that no such lease or contract shall be made until the governing body of the municipality shall have held a public hearing in respect thereto on at least ten days notice published in two newspapers having general circulation in the municipality ”.
It appears from the foregoing that the only requirement or condition imposed by statute upon a contract between the defendant city and the defendant Van Dyke for a taxicab concession at the airport was the holding o'f a public hearing in respect thereto on at least 10 days ’ notice published in two newspapers in the city of Buffalo. It is stipulated herein that such notice was published on June 24, 1953 and a public hearing held on July 7, 1953.
The plaintiffs ’ contention that there has not been a compliance with the statutory requirement arises from the fact that the first contract between the defendant Van Dyke and the city, dated April 22, 1953, was entered into following an advertising for bids and without a public hearing. On February 17, 1953 after the receipt of bids, the Common Council by resolution duly adopted that day, accepted the bid of the defendant Van Dyke and authorized a contract in accordance with the specifications upon which the bid has been made. This original formal contract, Exhibit “ F ”, executed on April 22, 1953, was for a term of five years commencing May 1, 1953 and the defendants city and Van Dyke have since that date been operating in accordance with its provisions.
Thereafter, the attention of the Common Council was called to the statutory requirement for a public hearing in matters of this kind, and such a hearing following the due publication of notice thereof was held on July 7, 1953 following which the Common Council on July 21, 1953 adopted a further resolution ratifying and confirming the contract dated April 22,1953 which was approved by the mayor and became effective August 4,1953.
*630 This action was commenced by the plaintiffs on September 2, 1953. After the commencement of this action, the Common Council was advised that it would be desirable for the defendant city, to obviate any technical question concerning the validity of the contract with the defendant Van Dyke, to make and execute a new contract, the term thereof to commence from the date of such execution and to expire on April 30,1958 containing the same provisions and covenants as the contract of April 22, 1953. On December 22,1953 the Common Council duly adopted a further resolution in the matter authorizing the execution of a new contract with the defendant Van Dyke and such contract was in fact made and executed on December 23, 1953 and is Exhibit “ M ” in this action.
At the commencement of the trial, the court granted the plaintiffs’ motion to amend their complaint to include the contract of December 23, 1953 as a contract made by the defendant city, which the plaintiffs allege is null and void as well as the contract of April 22,1953, originally the subject of attack herein. In the present state of pleadings and proof in this action the only contract the validity of which is material to the disposition of the issues is that made on December 23, 1953, which for all intents and purposes superseded the earlier one between the parties, which had been ratified by a resolution of the Common Council following a public hearing. This court is not called upon to weigh the merits of the contract or to evaluate its wisdom or desirability. Its sole duty and right in this action is restricted to a determination of the narrow legal question of whether or not the defendant City of Buffalo, in entering into the contract, complied in all material respects with the applicable provisions of section 352 of the General Municipal Law.
The plaintiffs urge that since the final contract dated December 23, 1953, made after the holding of the public hearing on July 7, 1953, is the same contract in substance as that dated April 22, 1953 and ratified July 22, 1953, it is affected by any infirmity for noncompliance with the statutory requirement for a public hearing as the original contract. With this contention, the court cannot agree. The statute may not be interpreted to mean anything more than it plainly says: namely, that a public hearing be held before the making of a contract such as that which finally emerged between the defendants city and Van Dyke on December 23, 1953. The hearing required by statute was in fact duly held before this particular contract was made and even though it be identical to the earlier contract which may not have been valid, its legality is not affected by any such infirmity.
In view of this determination it becomes necessary for the *631 court to pass upon the questions of whether the first contract of April 22, 1953 was in fact valid even though no public hearing was held pursuant to publication of notice because of the compliance with the special provisions of the Buffalo City Charter, or whether any infirmity in the first contract was cured by its subsequent ratification by the Common Council following the public hearing of July 7, 1953. The essential and controlling fact herein is, that at the present time the only contract between the defendants city and Van Dyke as a result of which the plaintiffs are excluded from operating a taxicab business at the Municipal Airport is that of December 23, 1953 and this contract was entered into legally and validly and in compliance with the provisions of section 352 of the General Municipal Law.
Accordingly the court directs the entry of a judgment herein dismissing the plaintiffs’ complaint as to all defendants, with costs.
This memorandum constitutes the written decision of the court upon which the judgment directed may be entered.