Howard T. Hogan, J.
Plaintiff, owner of the Bast Hampton Municipal Airport, a public improvement built and maintained with public funds, brings this action to restrain defendants from soliciting and securing patrons for their air charter service and from carrying on any business as a 11 fixed base operator ’ ’ at said airport, except in accordance with the terms of any lease which may be entered into by the parties. Defendants counterclaim for judgment that plaintiff be required to allocate appropriate space to them upon which to conduct their operations, and to issue all permits necessary in connection therewith. They allege due application for such a lease “ for the non-exclusive right in common with others of ingress and egress from the East Hampton Airport, and of airport parking area therein and of the use of the common areas of the airport, including runways, taxiways, aprons, roadways, flood lights, landing lights, signals and other conveniences for the take-off, flying and landing of aircraft ”, and allege further that plaintiff has refused to negotiate such a lease.
From 1949 to 1956, defendants operated an air transport service at the East Hampton Airport under a lease from plaintiff, providing in addition to other things commuter service between the Hamptons, New York City and other points. From August, 1956 until May, 1957, they continued on the premises as holdover tenants. In April, 1957, the plaintiff advertised for bidders for a new lease, thereafter entering into a five-year rental commencing June 1,1957, with Long Island Airways, Inc., the successful bidder. Defendant had submitted a lower bid.
The new lease gave to the lessee, among other things, the exclusive use of the town-owned hangers and administration building, the exclusive right to maintain gasoline pumps, and the exclusive right to sell gasoline, oil, food and beverages and aircraft, and to rent hangars and storage space to others. In addition, it provided for the nonexclusive right, “ in common with others ”, of ingress to and egress from all parts of the airport, except that the rights of others did not extend to ‘ ‘ such private offices as the Lessee may maintain; ” “ the nonexclusive use ( emphasis supplied), in common with others, of the airport parking areas, appurtenances and improvements thereon ”; the nonexclusive right, in common with others authorized to do so, to use common areas of the airport, to give flying instructions, to rent aircraft, to carry passengers and *1044 freight for hire, (Par. 1 [e]) “ Subject to * * * ordinances of the Town of East Hampton ’ ’, to provide storage space for its own aircraft, to have a repair shop and to sell aircraft parts and accessories.
Defendants thereupon sold to the lessee certain office furniture and other personal property which they had used in connection with their operation, vacated the buildings, but kept their aircraft and continued to engage in the transport business, using the airfield as a base of operations and making their bookings from the home of defendant Lamb. In June, 1957, they entered into a rental or sublease of the privilege of tying down five of their aircraft with the new tenant, on a month to month basis, and at the same time asked plaintiff to negotiate with them a lease of one acre of the airfield not already reserved exclusively to Long Island Airways, Inc., for offices and storage facilities. The testimony of the supervisor of the plaintiff town indicates to the court that, for reasons not revealed, plaintiff refused to enter into such negotiations, although it had already granted “ non-exclusive ” leases of portions of the airfield to the Smith Meal Fishery Company, which bases planes for use in spotting the location of schools of fish, and to one Edward Kalish, who occupies a building in which he overhauls and services airplanes.
Plaintiff’s witness Harrison also testified that this was a public airport, that other persons and organizations used it, and that the general public, other air charter operators and air taxi operators could and did use it freely.
On August 31, 1957 plaintiff wrote to the lessee, Long Island Airways, Inc., quoting a resolution adopted the previous day, the substance of which was that the plaintiff’s town board considered that the lease was not intended to authorize the subleasing of tie-down space to any commercial operator other than itinerants, and that the lessee was requested to refrain from acting in violation of “ the spirit and intent ” of the said lease. This, despite the plain language of paragraph (1) (b) of the lease which gave the lessee the exclusive right in and on the airport “ to rent to others hangar and storage space.” Obviously the letter was aimed at ending the defendants’ tie-down privileges and it succeeded, for immediately thereafter the lessee notified defendants that their tie-down rights were terminated and it refused to accept any further rent from them.
It was established at the trial that on or before 1937, Federal funds were received through the Work Projects Administration, and used in the construction of the airport. This is the basis for the defendants’ contention that plaintiff is bound lw *1045 section 303 of the Civil Aeronautics Act (U. S. Code, tit. 49, § 453, enacted June 23, 1938) which provides that: “ There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended.”
Plaintiff, on the other hand, argues that (1) the above-quoted law became effective after the money had been received and expended, and that the statute was not retroactive in effect, and (2) in any event, it referred only to moneys received under chapter 14 of title 49 of the United States Code, entitled ‘1 Federal Aid for Public Airport Development ” which was enacted in 1946 and is prospective in effect.
Although plaintiff’s position seems to controvert the meaning of the language used in section 303 (supra) and although the aforesaid lease (Par. 14) expressly states that: “It is understood and agreed that nothing herein contained shall be construed to grant or authorize the granting of any exclusive right within the meaning of section 303 of the Civil Aeronautics Act” (U. S. Code, tit. 49, § 453), it is not necessary to pass upon the interpretation and application of the Federal law at this time.
The power to establish municipal airports is found in subdivision 4 of section 220 of the Town Law of the State of New York, and the power to adopt regulatory ordinances in section 130 of that law. Section 352 of the General Municipal Law provides that the legislative body of a town which has established an airport may “ 2. Adopt regulations and establish fees or charges for the use thereof, and fix civil penalties for the violation of such regulations and provide for their enforcement ’ ’ and may “ 5. Lease, or sub-lease the real property or lease, contract or otherwise agree, on an exclusive or non-exclusive basis, (emphasis supplied) for the entire operation of such airport or landing field, or of any part thereof, or for the rendering of various services, or the conduct of business activities, on or at said airport or landing field * * * upon such terms as sba.fi require the operation of the same as a public airport or landing field for the general use of the public and for the benefit of such * * # town.”
Even without the authority of this last statute the plaintiff had the unquestionable right to lease the entire operation of the airport to one individual or corporation exclusively since it is acting in a proprietory capacity (Ricotta v. City of Buffalo, 3 Misc 2d 625, 627). It did not do so, but gave to Long Island Airways only the exclusive use of certain buildings and the exclusive right to sell gasoline and oil, food and beverages, and *1046 aircraft, and to rent hangar and storage space to others. Although authorized hy the statutes, it never gave Long Island Airways, Inc. the exclusive right to carry passengers and freight for hire. Instead, the lease (Par. 1 [e]) granted the lessee no more than the nonexclusive right “ in common with others authorised to do so ”, to conduct such a business.
However, by the simple expedient of refusing to negotiate the matter of authorization with the defendant, the plaintiff could, in effect, convert the nonexclusive rights of the lessee into exclusive ones. Assuming that bids were made or withheld on the representation that the lease was to be a nonexclusive one, and that the lessee might have to share some of his transportation and other business with competitors, then plaintiff, by arbitrarily withholding authorization from qualified applicants, might give the lessee substantially more than he had bargained for.
Under such circumstances, and in view of the conceded facts that defendants are qualified to carry on an air transportation business under all applicable State and Federal statutes, rules and regulations, and that plaintiff has failed to adopt any local ordinances and regulations which might in any way disqualify defendants, its refusal to entertain their application seems arbitrary, unreasonable and capricious.
Plaintiff relies upon the decision of the Supreme Court of Appeals of West Virginia in County Court of Harrison County v. West Virginia Air Service (132 W. Va. 1, 3-4) which held, under a state of facts in many ways similar to those of the case at bar, that where a company had operated a chartered passenger service from a public airport under a lease, and continued to do so after its lease had expired, and after another lease had been granted permitting the new lessee 1‘ to use fully and freely and nonexclusively, in connection with others, the landing fields and facilities * * # and the right to establish and continue an air service, including both transit and commercial flying for hire, to run a school for instruction in flying and to do and perform such other acts as are related to and connected with the rights and privileges mentioned therein ”, the defendant would be enjoined from using the airport for a flying school and other special activities, hut not from engaging in nonscheduled commercial flying and nonscheduled service for the intrastate transportation of passengers, under its certificate of convenience and necessity.
It found that when the County Court of Harrison County, the owner and operator of the airport, repeatedly offered to discuss a new agreement with the defendant after it had already *1047 entered into a nonexclusive arrangement with the new lessee, and actually presented an offer, defendant rejected it without making a counteroffer, arbitrarily broke off negotiations and made no attempt to renew them. (This is the direct reverse of the situation here present.)
The court said further (p. 10): “ So under the broad wording of this statute [Chap. 11, Acts, W. Va. Legislature, 1947], the county court has practically full power, so long as it does not act in a capricious manner or in opposition to the public interest to manage, control and regulate the instant airport as it deems advisable. It is not, in our opinion, under the obligation to make regulations, though it has the power to do so.” (Italics supplied.)
In the judgment of this court, whether or not plaintiff is under an obligation to make regulations, its failure to do so, coupled with its practice of permitting other air charter operators and air taxi operators to use the airport freely, and its present attempt to bar defendants, who are violating no existing regulations, are arbitrary and capricious. There are, for example, no regulations defining or differentiating between “transient” and “fixed base” operators, no fixed schedule or fees, nor any limitation upon the time aircraft may be stored or parked at the airport.
For the above reasons, the court finds that the plaintiff is not entitled to the equitable relief of an injunction.
As to defendants’ counterclaim, it is beyond the power of this court to direct or compel plaintiff, by its legislative body, to negotiate or execute a lease to the defendants.
Accordingly, both the complaint and the counterclaim are dismissed, without costs to either party.
The foregoing are the facts found by the court and constitute its decision as required by section 440 of the Civil Practice Act.