In the Matter of the COUNTY OF MONROE's Compliance with Certain Zoning and Permit Requirements of the CITY OF ROCHESTER in Connection with the City/County Airport Expansion.

Fourth Department, October 20, 1987

**APPEARANCES OF COUNSEL**

*Louis N. Kash, Corporation Counsel (Ellen Anderson* of counsel), for City of Rochester.

*Charles R. Valenza, County Attorney (Ann Kerwick* of counsel), for County of Monroe.

## OPINION OF THE COURT

GREEN, J.

This controversy is submitted to the Appellate Division in the first instance on an agreed statement of facts (CPLR 3222). The novel question presented is whether the planning, design and construction of proposed improvements to the Greater Rochester International Airport (airport) by the County of Monroe (County) are subject to the site plan review process and permit requirements provided in the City Code of Rochester (City). We conclude that the County is exempt from the application of the City Code because the County is authorized by statute to operate and maintain the airport and the airport expansion involves a governmental rather than a proprietary function.

The following are the stipulated facts. The County has owned and operated the airport since 1948 pursuant to section 350 of the General Municipal Law and has received substantial Federal funding for improvements relating to the access roads and apron facilities. The airport terminal and a major portion of the airport runways, taxiways, landing facilities and parking facilities are currently located on real property owned by the County and situated in the City. All planned construction and improvements which are the subject of this action are to be made on airport property located within the City.

Between 1984 and 1986 the County amended its master plan for the airport to include several planned improvements including expansion of the main terminal and construction of a hotel, an enclosed parking garage, an air freight facility, and temporary employee parking lots. The hotel is to be constructed and operated by a private lessee. The County hired a private consultant to coordinate the improvements. In 1986, the County received two proposals for the development of the garage and the hotel. The County and the selected developer have agreed that the developer will obtain building permits from the City for construction of the garage and the hotel. The County has advised the developer that a site plan approval will be required only for the hotel.

The City's position is that, pursuant to various City ordinances, permits (building, electrical, plumbing, etc.) are required for all work at the airport including the temporary parking facilities and the runways. The County acknowledges that it has not obtained such permits. The City also maintains

that site plan review of all proposed improvements is required by section 115-30 D (7) of the City Code which requires such approval for "(7) Any development or redevelopment involving the construction of any building to be constructed, owned, leased, or operated by any unit of the national, state or local government, or the exterior alteration of any building to be constructed, altered, owned, leased or operated by the City of Rochester; or the use or development of any land to be owned, leased or operated by any such unit of government."

In February 1987, the County Director of Engineering and the County's consultants submitted to the City a site plan application which included the garage, hotel, terminal expansion and access and service roads, but not the temporary parking facilities, or runways. The County has acknowledged that the portion of the expansion involving the hotel is not in issue. The air freight facility received site plan approval in October 1986 and the County eventually obtained all appropriate permits for it by February 1987. In April 1987, the City requested additional information from the County including a 1979 environmental impact assessment report, a full assessment of the traffic impact of the proposed airport expansion, an explanation of how erosion and sedimentation controls will be used and a detailed description of the expansion project including the relationship, if any, between the County and private investors.

In response to the City's requests, the County challenged the City's authority to require site plan review of improvements which the County contends are related to the governmental function of the airport. The County contends that all activities incidental to the operation of the airport including temporary and permanent parking, runways, terminal and the air freight facility are governmental functions of the County. In a letter dated May 29, 1987, the County's Director of Engineering informed the City's Director of Zoning that although the County had historically kept the City informed of its design and construction activities at the airport, and in fact had submitted a site plan application, this did not imply any commitment by the County to submit to the City every proposal for airport improvement. The County noted in this letter that the processing of, and approvals for, improvements at the airport came from the County Planning Board and the County Legislature, all subject to public hearings at which the City may participate. The County also acknowledged primary responsibility for airport traffic and related matters and has

coordinated with other State agencies, such as the Department of Transportation, on matters directly affecting activities at the airport.

In a letter dated June 22, 1987, the City responded that the County's lessee, Airport Systems, Inc., began work on the air freight facility without permits and complied with the City Code and paid penalties only after the City informed the lessee of its obligation to obtain permits and site plan approval. The City clearly stated its position that the airport is a proprietary rather than a governmental function and that all aspects of the expansion project are subject to the City's review requirements the same as a private facility.

In June 1987, the County entered into a contract for the construction of temporary parking facilities at the airport. The contract required the contractor to comply with all laws, ordinances, rules and regulations applicable to the work and to procure all permits and licenses necessary for completion of the work. As of June 22, 1987, no permits were on file with the City for construction of the surface parking lot development. The City contends that construction of the temporary parking lot should not have commenced without the issuance of a City building permit conditioned upon site plan approval.

The County has prepared bid specifications for construction of the airport terminal. These bid documents do not require contractors to submit to a site plan review by the City, but the County intends to require that the contractors obtain a building permit from the City for the terminal expansion.

In sum, the City contends that pursuant to section 115-30 D (7) of the City Code all proposed airport improvements are proprietary functions and subject to site plan review and permit requirements. The County acknowledges that all proprietary functions are subject to such review, but contends that the only planned improvement at the airport which can be deemed proprietary is the hotel. Accordingly, both the County and the City seek a declaratory judgment regarding the application of the City Code to the proposed improvements and expansion of the airport.

As a general rule, a municipality is not subject to local zoning or building restrictions in the performance of its governmental, as distinguished from its proprietary, activities (see, Little Joseph Realty v Town of Babylon, 41 NY2d 738, 742; Nehrbas v Incorporated Vil. of Lloyd Harbor, 2 NY2d 190, 193). There is some difficulty, however, in determining which

municipal functions are governmental, and which are proprietary *(see, e.g., Brush v Commissioner,* 300 US 352, 362-365; *County of Nassau v South Farmingdale Water Dist.,* 62 AD2d 380, 384-385, 387-388, *affd* 46 NY2d 794, 796). As the Court of Appeals has stated, "[w]hether a particular activity involves a governmental function or one proprietary is a matter not always easy of determination. Past decisions, mostly in the field of tort liability * * * prove of little value, and no all-embracing formula or definition is possible" *(Nehrbas v Incorporated Vil. of Lloyd Harbor, supra,* at 194).

The governmental functions of a municipality are those conferred upon it as a local agency, to be exercised not only in the interest of its inhabitants, but also in the advancement of the public good *(see, Walla Walla v Walla Walla Water Co.,* 172 US 1, 8-9). These include the expenditure of money relating to public improvements. A distinction between acts in the performance of a governmental function and those in the performance of a proprietary function is that in the case of the former the municipality is executing its legislative mandate with respect to a public duty generally, while in the latter it is exercising its private rights as a corporate body *(see, O'Brien v Town of Greenburgh,* 239 App Div 555, 558, *affd* 266 NY 582). Typical examples of municipal governmental functions are the exercise of eminent domain, assessment and collection of taxes, police and fire protection, water treatment and sewage and garbage disposal *(see,* 56 Am Jur 2d, Municipal Corporations, Counties and Other Political Subdivisions § 200, at 258).

We must decide whether the proposed airport improvements constitute a governmental or proprietary function. The overwhelming authority in other jurisdictions is that the operation and maintenance of an airport is a governmental function *(see, e.g., Amersbach v City of Cleveland,* 598 F2d 1033, 1037-1038; *Imperial Prod. Corp. v City of Sweetwater,* 210 F2d 917; *Kirksey v City of Ft. Smith,* 227 Ark 630, 300 SW2d 257; *Abbott v City of Des Moines,* 230 Iowa 494, 298 NW 649; *Aviation Servs. v Board of Adjustment,* 20 NJ 275, 119 A2d 761).

Viewing the operation of the Greater Rochester International Airport in relation to the factors considered in these cases leads us to conclude that the proposed airport improvements at issue here constitute a governmental function. In operating the airport, the County is providing terminal facilities for public and commercial air carriers vital to an effective

air transportation system. The airport is a major facility located on interstate air routes and utilized by public and private aircraft traveling both locally and interstate. Clearly, the airport is operated for the benefit of the general public and not for the particular advantage of the inhabitants of the City or the County.

The City's reliance upon *Ricotta v City of Buffalo* (3 Misc 2d 625) is misplaced. There, the operator and owner of an independent taxicab licensed by the City sought a judgment declaring null and void a contract between the City and a private enterprise for an exclusive taxicab concession at the Buffalo Municipal Airport. The court dismissed plaintiffs' complaint holding that the ownership and operation by the City of the airport involved a proprietary rather than governmental function. The court reasoned that plaintiffs' licenses did not confer any right to conduct a taxicab business on the private property owned by the City and were not impaired by the contract. The court noted that the roadways and areaways of the Buffalo airport had never been dedicated as public streets pursuant to the Buffalo City Charter and as such were private property, the use of which the City might regulate and restrict pursuant to its inherent and statutory power.

It is apparent that the limited purpose of the *Ricotta* holding was to immunize the City from liability for the exercise of its municipal discretion over the use of its property. Such a purpose is not involved in this case and even if it were, the exercise of municipal discretion will be protected here only if it is determined that the operation of the Greater Rochester International Airport is a governmental function. Moreover, even if the *Ricotta* holding was valid in 1954 when it was pronounced, it has little validity today, over three decades later, when the operation of municipal airports is considered an indispensable function of government *(see, Amersbach v City of Cleveland, supra)*.

We recognize that the governmental versus proprietary distinction is of ancient vintage and was judicially created to alleviate the hardships of the application of the doctrine of sovereign immunity in tort litigation. New York courts have been reluctant to expand the distinction in other contexts *(see, County of Nassau v South Farmingdale Water Dist., supra)*. Because the governmental versus proprietary test may be unconvincing, courts have relied upon additional factors to support their determinations in cases similar to the one before us. One such factor is the existence of State enabling legisla-

tion which may either direct or authorize a municipality to undertake a governmental function. Where a municipality can find authority in a statute to do a certain act, and where the act results in a conflict with a local ordinance, courts have held that the ordinance does not apply *(see, Incorporated Vil. of Lloyd Harbor v Town of Huntington,* 4 NY2d 182; *Bischoff v Town of E. Hampton,* 47 Misc 2d 615; *Matter of Barnathan v Kramer,* 44 Misc 2d 203; *see also, Pueblo Aircraft Serv. v City of Pueblo,* 679 F2d 805).

In the instant case, the County is authorized by statute to operate and maintain the airport (General Municipal Law §§ 350, 352 [1]; §§ 355, 356). Such legislation exists, at least in part, to benefit the general public and not just the residents of the municipality in which the airport is located. In performing its functions regarding the planned airport expansion and construction, the County is implementing the purposes for which the statute was created *(see, People v Rodriguez,* 115 Misc 2d 866, 868-869).

In conclusion, we declare that Rochester City Code § 115-30 D (7) and City permit requirements do not apply to the expansion of the Greater Rochester International Airport as it affects the terminal building, temporary and permanent parking facilities, runway aprons and the air freight facility. Judgment should be entered accordingly in Monroe County Supreme Court *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3222:10, at 1086; *Kinney v Kinney,* 48 AD2d 1002, 1003).

DILLON, P. J., CALLAHAN, PINE and LAWTON, JJ., concur.

Submitted controversy unanimously determined in favor of County of Monroe and judgment granted, without costs, in accordance with opinion by Green, J.