■ Louis J. Karedes, Respondent, v Village of Endicott, Appellant. [746 NYS2d 96] —Cardona, P.J.

Since 1963, plaintiff has been the licensed operator of a restaurant at the En-Joie Golf Club in the Village of Endicott, Broome County, owned by defendant. In 1976, plaintiff entered into a 10-year licensing agreement with defendant to operate the restaurant which agreement provided that defendant would receive both monthly payments and a percentage of the restaurant's gross receipts. That licensing agreement was subsequently renewed by defendant's Board of Trustees (hereinafter Board) for consecutive five-year terms with the most recent agreement set to expire on February 6, 2001. In early December 2000, plaintiff wrote a letter to the Board indicating

his desire to renew the agreement for another five-year period. Plaintiff met with defendant's attorney and prepared a revised agreement for the Board's consideration. On December 27, 2000, the six-member Board approved the agreement despite the voiced objections by defendant's Mayor. The agreement was approved by a vote of 4 to 1, with one trustee abstaining. Notably, at that time, two of the trustees voting to approve the license and the trustee who abstained were serving out their terms. They were being replaced by three new trustees who had been elected in November 2000.

Thereafter, on January 8, 2001, after the new trustees were sworn in, the Mayor called a special meeting of the Board and recommended that the December 27, 2000 resolution approving plaintiff's licensing contract be rescinded. When the Board's vote resulted in a tie of 3 to 3, the Mayor, required to end the stalemate, cast the deciding vote which rescinded the resolution by a 4 to 3 vote. Of the three new trustees, two voted to rescind the contract while the other voted to sustain it. On January 9, 2001, the Mayor sent a letter to plaintiff notifying him of the Board's decision and also indicating that he could submit, along with any other interested parties, a new licensing proposal to operate the restaurant.

Plaintiff commenced this breach of contract action and, following joinder of issue, moved for partial summary judgment on liability. Defendant cross-moved for summary judgment dismissing the complaint, claiming that the newly constituted Board was not bound by the previous Board's agreement with plaintiff. Supreme Court denied defendant's cross motion and granted plaintiff's motion for partial summary judgment, resulting in this appeal.

Initially, defendant contends that plaintiff's claim should be dismissed for failure to file a written verified claim with the Village Clerk in accordance with CPLR 9802. The record confirms that defendant failed to object before Supreme Court to the absence of the notice of claim. Accordingly, defendant is precluded from "relying on the fact that compliance with the notice requirements was neither pleaded nor proved" (*Salesian Socy. v Village of Ellenville*, 41 NY2d 521, 525; *see, Flanagan v Board of Educ., Commack Union Free School Dist.*, 47 NY2d 613, 617).

Turning to the merits, we first examine whether it was permissible for the outgoing Board, under the circumstances, to bind the successor Board to a five-year contract. This Court recently held that municipal boards "may [not] bind future boards to a contract for *professional* services, absent express

legislative authority for doing so" (*Matter of Karedes v Colella*, 292 AD2d 138, 142 [emphasis supplied]). In the instant matter, however, plaintiff is not providing professional services. Rather than being compensated by defendant, plaintiff is paying defendant a fixed rent and an annual percentage of his sales in return for the license to operate and occupy the restaurant. Furthermore, we find that defendant was clearly acting in a proprietary capacity when it provided plaintiff with the license (*see, Miller v State of New York*, 62 NY2d 506, 511; 18A McQuillin, Municipal Corporations § 53.115 [3d rev ed]; *see generally, Matter of County of Monroe*, 131 AD2d 74, 78; 10A McQuillin, Municipal Corporations § 29.101 [3d rev ed]). As such, the outgoing Board's approval of the leasing agreement would be binding on the successor Board (*see,* Village Law § 4-412; *see also, Morin v Foster*, 45 NY2d 287, 293; 10A McQuillin, Municipal Corporations § 29.101 [3d rev ed]; *compare, Matter of Ramapo Carting Corp. v Reisman*, 192 AD2d 922, 923; *Matter of Lake v Binghamton Hous. Auth.*, 130 AD2d 913, 914-915).

Defendant further contends that the outgoing Board's approval of plaintiff's licensing agreement was made in bad faith and, therefore, void as against public policy. As a general rule, New York courts will void, as against public policy, contracts that are entered into by outgoing municipal boards in bad faith for the sole purpose of binding the members of incoming boards (*see, Hendrickson v City of New York*, 160 NY 144, 149-150; *Matter of Martin v Hennessy*, 147 AD2d 800, 802; *Matter of Harrison Cent. School Dist. v Nyquist*, 59 AD2d 434, 436, *lv denied* 44 NY2d 645; *Ferkin v Board of Educ. of Union Free School Dist. No. 25, Town of Hempstead*, 253 App Div 751, 751, *revd on other grounds* 278 NY 263). Assuming arguendo, that contracts entered into by a municipality in its proprietary capacity can be voided on this ground, we find that bad faith on the part of the trustees herein was not sufficiently established despite the timing of the license renewal by the outgoing Board.

Certainly, it is clear that issues involving the Board and the Mayor were affected by the highly contested election for the trusteeships that included publicized criticisms of the Board's approval of the contract rehiring plaintiff's son as manager of the golf course (*see generally, Matter of Karedes v Colella*, *supra*). However, the record does not contain extensive information, aside from speculation, establishing deficiencies with plaintiff's long-standing operation of the restaurant other than an item in an auditor's report pointing out certain late monthly

payments by plaintiff necessitating stricter oversight by defendant. Although the Mayor expressed concern that certain trustees' votes appeared to be influenced by, inter alia, alleged social ties to plaintiff's family, the record is devoid of evidence that any trustee directly benefitted from the licensing agreement (*cf., Matter of Tuxedo Conservation & Taxpayers Assn. v Town Bd. of Town of Tuxedo*, 69 AD2d 320). While defendant points out that the trustees in the past received VIP passes to a golfing event, the record indicates that all members of the Board received the passes, irrespective of how they voted in relation to the licensing agreement. Additionally, while defendant claims that the Board's failure to open up the restaurant license to competitive bidding establishes its bad faith, we note that licensing agreements do not generally *require* competitive bidding pursuant to General Municipal Law § 103 (*see,* 1988 Ops St Comp No. 88-60). Given the absence of dispositive proof of bad faith, we find no reason to disturb Supreme Court's ruling.

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.